BAUER, Circuit Judge.
 

 Plaintiff Luedtke Engineering Company brought this diversity action against Defendant Indiana Limestone Company, alleging that Indiana Limestone breached its contract to sell breakwater stone to Luedtke. The district court held in favor of Indiana Limestone, and Luedtke appeals. We affirm.
 

 I
 

 In December 1977, the Army Corps of Engineers (the Corps) solicited bids for repair of the breakwater in the Milwaukee harbor.
 
 [1]
 
 The Corps approved two sources
 
 *599
 
 from which bidders could purchase stone: Indiana Limestone and another quarry located in Indiana. The Corps earlier had given Indiana Limestone information about the repair project, including details of the Corps’ time schedule. That schedule anticipated that work on the project would begin in March 1978 and be completed by November 1979.
 

 The Corps also sent Indiana Limestone a list of the general contractors who planned to bid on the project; the list included Luedtke. Indiana Limestone and Luedtke had engaged in at least five other projects together. After receiving the list, Indiana Limestone sent Luedtke a letter containing a price quotation. Indiana Limestone’s letter, dated February 20, 1978, contained the following proposals:
 

 (1) Indiana Limestone would supply Luedtke with 70,000 tons of stone at $10.15 per net ton;
 

 (2) The price would apply to shipments made during 1978 and 1979;
 

 (3) Luedtke would be obligated to negotiate the freight rate for stone shipped in 1979 with the railroad company.
 

 Luedtke relied on Indiana Limestone’s quote to formulate its bid for the project. On April 12, 1978, the Corps awarded the contract to Luedtke.
 

 After it received the Corps’ contract, Luedtke located a different quarry that offered to sell breakwater stone for $5.25 per ton. Because this quarry had not been approved by the Corps, Luedtke made several attempts to obtain permission from the Corps to buy stone from this quarry. When Indiana Limestone learned that Luedtke wanted to buy from another source, an Indiana Limestone official phoned Luedtke and offered to lower his company’s price to $5.50 per ton. On the same day, the Corps denied Luedtke’s request to purchase stone from the unapproved quarry.
 

 On July 1, 1978, Luedtke issued a purchase order to Indiana Limestone for 70,-000 tons of stone at $5.50 per ton. The order stated that Indiana Limestone should “ship at 1500 tons/day starting 24 July 1978.” At this rate, shipping would be completed by November 1978. For a variety of reasons, Indiana Limestone did not ship the stone at the specified rate; Luedtke instead received the last shipment in August 1979. Luedtke nevertheless finished the job in September 1979, seven weeks before the Corps’ scheduled completion date of November 15.
 

 Luedtke brought suit alleging that Indiana Limestone breached its contract by failing to ship the breakwater stone at the rate of 1,500 tons per day. Luedtke claimed that it incurred damages of $797,-700 as a result of untimely and delayed deliveries. Indiana Limestone countered that it was unaware of Luedtke’s intention to finish the project by November 1978, that it believed the shipping rate of 1,500 tons per day was merely an optimal goal, and that its delays in delivery were caused by factors beyond its control, including insufficient rail service, labor strikes, and bad weather.
 

 The district court held in favor of Indiana Limestone. The court ruled that Indiana Limestone’s February 20 quote letter was an offer to sell breakwater stone to Luedtke, and that Luedtke’s purchase order was an acceptance of that offer. The court found that Luedtke’s specific delivery requirement was a “material alteration” of the offer under Indiana law, and thus the parties had not agreed to a shipping rate. As a result, the court turned to the parties’ course of dealing and trade usage in the industry to evaluate Indiana Limestone’s performance. The court determined that Indiana Limestone delivered the stone in a reasonable time and thus did not breach the contract. Alternatively, the court held that even if Luedtke’s shipping term was part of the contract, course of dealing and trade usage could help interpret the con
 
 *600
 
 tract, and Indiana Limestone still would not be liable.
 

 II
 

 This case is governed by the Indiana Commercial Code, Ind.Code § 26-1-1-101
 
 et seq.
 
 (1979), which is identical to the Uniform Commercial Code in all sections relevant to this dispute. Under Section 2-207, Ind.Code § 26-1-2-207 (1979), an additional term in an acceptance to a contract between merchants becomes part of the contract unless the offer expressly limits acceptance to the offer’s specific terms, the offeror objects to the additional term, or the additional term materially alters the contract. Luedtke argues that the district court erred in concluding that the delivery term in Luedtke’s purchase order was a material alteration.
 

 Initially, we must determine the standard of review for evaluating the district court’s conclusion. Luedtke contends that whether a term materially alters a contract is a question of law to be accorded full appellate review, or at least a mixed question of law and fact. Indiana Limestone argues that this is a factual question and thus the trial court’s conclusion must be upheld unless clearly erroneous. We have found no decisions by Indiana courts construing this issue.
 

 We are persuaded that Indiana Limestone’s interpretation is correct. First, Comment 4 to Section 2-207 defines “material alteration” as a term that would “result in surprise or hardship if incorporated without express awareness by the other party.” Determining this requires the trial court to make a factual evaluation of the parties’ positions in each case. As one court stated, “[T]he materiality of a change is to be judged in large party by the expectations of the parties involved in the transaction. That is a determination uniquely within the province of a fact finder____”
 
 Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,
 
 402 F.Supp. 421, 442-43 (E.D.Pa.1975). Second, other courts interpreting UCC Section 2-207 uniformly have held that the materiality of an alteration is a question of fact.
 
 See, e.g., N & D Fashions, Inc. v. DHJ Industries, Inc.,
 
 548 F.2d 722, 726 (8th Cir.1977);
 
 Medical Development Corp. v. Industrial Molding Corp.,
 
 479 F.2d 345, 348 (10th Cir.1973);
 
 Dorton v. Collins & Aikman Corp.,
 
 453 F.2d 1161, 1169 n. 8 (6th Cir.1972). We hold that whether a term is a material alteration under Ind.Code § 26-1-2-207 is a question of fact to be resolved by the trial court, and thus we will overturn the court’s conclusion only if clearly erroneous.
 

 The evidence in the record supports the district court’s conclusion that enforcing a delivery rate of 1,500 tons per day would have resulted in surprise and hardship for Indiana Limestone. The court based its finding on two factors. First, the court concluded that the delivery rate was based on Luedtke’s intention to complete the Milwaukee breakwater project by November 1978, but that Indiana Limestone did not know of Luedtke’s intention. The evidence amply supports this finding. In the summer of 1977, the Corps told Indiana Limestone that the completion date of the project was November 1979. Indiana Limestone made two references to 1979 prices in its offer to Luedtke and there is no evidence that Luedtke communicated to Indiana Limestone its desire to complete the project by November 1978. Indeed, in June 1978 Luedtke submitted a construction project chart to the Corps showing a July 1979 completion date.
 

 Second, the district court found that expecting Indiana Limestone to deliver stone at a consistent rate would have been contrary to the parties’ other dealings. Evidence of prior dealings was admissible here to help supplement the terms of the contract under Section 1-205 of the Indiana Commercial Code.Ind.Code § 26-1-1-205 (1979). Again, the record supports the court’s conclusion. Intervening factors such as railroad problems, bad weather, and labor disputes apparently prevented Luedtke from receiving prompt, consistent shipment of stone from this quarry in the past. Steven Zachmann, Luedtke’s chief engineer, testified at trial that 1,500 tons
 
 *601
 
 per day was an “arbitrary in-between quantity” that he derived from the different rates proposed by the parties during negotiation. Tr. at 236-37. Both Zachmann and Luedtke’s President, Karl Luedtke, admitted that they did not expect Indiana Limestone to meet the delivery rate. Tr. at 239-40, 358-59. In addition, Indiana Limestone’s sales representative, Robert New, and Indiana Limestone’s quarry supervisor, Athol Bennett, both testified that they considered 1,500 tons per day to be the maximum rate up to which Indiana Limestone would ship stone to Luedtke. Tr. at 473, 507.
 

 Luedtke nevertheless argues that Indiana Limestone’s conduct after receiving the purchase order shows that Indiana Limestone understood the delivery rate to be part of the contract. Luedtke notes that New wrote on the purchase order that twenty-five railroad cars would be needed to ship 1,500 tons per day, that New ordered twenty-five cars per day from the Milwaukee Railroad, and that he sent this information to the quarry. Luedtke also notes that during the contractual period Indiana Limestone never claimed that it had no responsibility to ship 1,500 tons per day as a justification for its sporadic deliveries. These arguments, however, challenge Indiana Limestone’s motives and the credibility of its witnesses. The district court has broad discretion in making these factual determinations and we decline to re-try them on appellate review.
 
 Sherkow v. Wisconsin,
 
 630 F.2d 498 (7th Cir.1980). As discussed, the district court’s determinations are not clearly erroneous. (Incidentally, the factors Luedtke cites are entirely consistent with Indiana Limestone’s contention that it considered the shipping rate to be a goal, not a requirement.)
 

 Luedtke next argues that if we accept the district court’s conclusion that the contract did not contain a shipping rate, then Section 2-307 applied and Indiana Limestone was required to ship all the stone in a single delivery. Section 2-307 provides in part that “[ujnless otherwise agreed all goods called for by a contract for sale must be tendered in a single delivery.” Ind.Code § 26-1-2-307 (1979). Yet Section 2-307 contains an exception to the single delivery requirement “where the circumstances give either party the right to make or demand delivery in lots,” and Comment 4 to Section 2-307 states that the phrase “unless otherwise agreed” includes surrounding circumstances, usage of trade, course of dealing, and course of performance. The circumstances here indicate that both parties expected delivery in lots. Luedtke does not contend that Indiana Limestone could have delivered all 70,000 tons of stone in one shipment, and such delivery obviously was not contemplated or desired by either party-
 

 The absence of a specific delivery term in the contract required Indiana Limestone to deliver the stone within a reasonable time. Ind.Code § 26-1-2-309 (1979). The district court found that Indiana Limestone’s delivery rate was reasonable, both because Indiana Limestone delivered the stone in time for Luedtke to finish the project before the Corps’ deadline, and because Indiana Limestone’s delivery delays were caused by factors beyond its control and expected by both parties in light of their previous dealings and industry practice. These conclusions are not clearly erroneous, and thus we affirm the court’s ruling that Indiana Limestone’s delivery was reasonable under the circumstances.
 

 Ill
 

 In summary, Luedtke’s delivery term was a material alteration of Indiana Limestone’s offer, and thus the contract did not include an express delivery term. Because Indiana Limestone delivered the breakwater stone within a reasonable time under the circumstances, Indiana Limestone did not breach its contractual obligations. This analysis disposes of Luedtke’s claims, and thus we need not discuss the district court’s alternative ruling or Indiana Limestone’s other arguments.
 
 [2]
 
 The district court’s order is affirmed.
 

 Affirmed.
 

 [1]
 

 . The district court described a "breakwater” and its purpose: “A breakwater barrier is an elongated mound, covered with rocks of various sizes, that runs somewhat parallel to the shore. Its function is to protect the navigable waterway
 
 *599
 
 between the shore and barrier from the turbulent waters of Lake Michigan.” Memorandum Decision at 2.
 

 [2]
 

 . Luedtke also suggests that Indiana Limestone’s February 20, 1978, letter was not an
 
 *602
 
 offer, but rather that Luedtke’s purchase order constituted an offer and Indiana Limestone’s shipment of conforming goods was an acceptance of that offer. Because Luedtke contended before the district court that either Indiana Limestone's letter or Luedtke’s purchase order may have constituted an offer, R. 5 at 2-9, Indiana Limestone argues that Luedtke cannot contend now that the February 20 letter was not an offer.
 
 See International Travelers Cheque Co. v. Bank America Corp.,
 
 660 F.2d 215, 224 (7th Cir.1981) ("[A] party cannot complain of errors which it has committed, invited, induced the court to make, or to which it has consented.”). We need not determine whether Luedtke is estopped to make this argument, however, because we agree with the district court that Indiana Limestone’s letter constituted the offer here.