**SCHULZE AND BURCH BISCUIT COMPANY, Plaintiff–Appellant,**

v.

**TREE TOP, INC., Defendant–Appellee.**

**No. 86–2679.**

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1987.
Decided Sept. 10, 1987.

Peter C. Woodford, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, for plaintiff-appellant.

John J. George, Daley & George, Ltd., Chicago, for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this diversity case governed by the Uniform Commercial Code as adopted in Illinois, the principal issue is whether the inclusion of an arbitration clause in a confirmation form is a "material addition" to a contract for the sale of apple powder, where the same clause appeared in confirmation clauses sent in each of nine similar previous transactions between the contracting parties. Under § 2–207 of the Uniform Commercial Code, an additional term in a confirmation form becomes part of the contract only if it does not materially alter the contract. Ill.Rev.Stat., Ch. 26, par. 2–207. The district court ruled that the arbitration clause became part of the contract. The district court thus granted defendant's motion to stay proceedings pending arbitration and to compel plaintiff to arbitrate, 642 F.Supp. 1155. Because under the circumstances of this case the addition of the arbitration clause would not result in "unreasonable surprise" and therefore would not be a "material alteration" of the contract, we will affirm.

## I

In the transaction that gave rise to the dispute that led to this case, Schulze and Burch Biscuit Company ("Schulze") purchased low moisture 16–mesh dehydrated apple powder from Tree Top, Inc., ("Tree Top"). Schulze uses the dehydrated apple powder in making strawberry and blueberry toastettes, which it sells to Nabisco, Inc.

On April 27, 1984, E. Edward Park, Schulze's Director of Procurement, telephoned Rudolph Brady, a broker for Tree Top. Park ordered forty thousand pounds of Tree Top's apple powder. Park told Brady that the purchase was subject to a Schulze purchase order and gave Brady the number of the purchase order. Park did not send the purchase order or a copy of it to Brady or to Tree Top. On the front of the purchase order was the following clause:

IMPORTANT

The fulfillment of this order or any part of it obligates the Seller to abide by the

terms, conditions and instructions on both sides of this order. Additional or substitute terms will not become part of this contract unless expressly accepted by Buyer; Seller's acceptance is limited to the terms of this order, and no contract will be formed except on these terms.

Shortly after the telephone conversation, Brady sent Schulze a form entitled simply "Confirmation." The form listed Brady as broker, Schulze as buyer and Tree Top as seller. It listed the quantity, price, shipping arrangements, and payment terms. It also showed the purchase order number that Park had given to Brady. Several preprinted provisions, including an arbitration clause, stood on the lower portion of the form:

> SELLER GUARANTEES GOODS TO CONFORM TO THE NATIONAL PURE FOOD LAWS.
> ALL DISPUTES UNDER THIS TRANSACTION SHALL BE ARBITRATED IN THE USUAL MANNER.
> THIS CONFIRMATION SHALL BE SUBORDINATE TO MORE FORMAL CONTRACT, WHEN AND IF SUCH CONTRACT IS EXECUTED. IN THE ABSENCE OF SUCH CONTRACT, THIS CONFIRMATION REPRESENTS THE CONTRACT OF THE PARTIES. IF INCORRECT, PLEASE ADVISE IMMEDIATELY.

Brady had sent a similar confirmation form to Schulze in each of at least nine prior transactions between Tree Top and Schulze. Schulze never objected to any of the preprinted provisions. Schulze had sent Brady a purchase order in two of those transactions. In each of the others, as in the transaction in the present case, Schulze simply informed Brady of the number of the appropriate purchase order.

Subsequently, Schulze brought this diversity suit seeking damages for breach of contract. Schulze alleged that the dehydrated apple powder had been so full of apple stems and wood splinters that it clogged the machinery of Schulze's toastette assembly line, causing the line to shut down, with various concomitant financial losses. Schulze alleged that the powder thus failed to meet Schulze's specifications, which had governed the various sales of apple powder. Those specifications set forth requirements and allowances for flavor, color, granulation, amount of foreign material, moisture and other characteristics. The specifications also provided that Schulze could test the powder "organopleptically," meaning Schulze's inspectors could test the powder with those most delicate of instruments, their own eyes, noses, and taste buds.

Tree Top's answer to the first amended complaint set forth several defenses: that Schulze had waived the right to enforce the alleged contract terms by its previous acceptances of similar powder, that Schulze's revocation of its acceptance in the present transaction was ineffective because Schulze should have discovered the nonconformity before using the powder in its assembly line, that Schulze should have sifted the powder before use, and that the damages were unforeseeable. Tree Top also alleged that the dispute was subject to arbitration because of the arbitration clause in the confirmation sent by Brady to Schulze.

Tree Top next filed a motion for stay of the action pending arbitration and for an order compelling Schulze to participate in the arbitration. The district court granted the motion. Schulze appeals. We have jurisdiction of the appeal under 28 U.S.C. § 1292(a)(1), under the *Enelow–Ettelson* doctrine. *Wilson–Wear, Inc. v. United Merchants and Manufacturers, Inc.*, 713 F.2d 324 (7th Cir.1983).

## II

The resolution of this case depends upon UCC § 2–207 (Ill.Rev.Stat., Ch. 26, par. 2–207):

> Additional Terms in Acceptance or Confirmation
>
> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or

different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

In this case, Brady, acting as Tree Top's agent[1], sent a confirmation that contained terms additional to those discussed by Brady and Schulze. Schulze did not object to the additional terms. Whether the contract was formed orally by the telephone call or by the confirmation acting as an acceptance, the arbitration clause was a term "additional to or different from those offered or agreed upon." The parties have proceeded on the assumption that they are both "merchants" for the purposes of § 2–207. The principal issue is thus whether the addition of the arbitration term would "materially alter" the contract. If so, under subsection 2, it would not become part of the contract.

The Uniform Commercial Code Comment to § 2–207 gives some examples of terms that do and that do not materially alter contracts.

4. Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches; a clause requiring a guaranty of 90% or 100% deliveries in a case such as a contract by cannery, where the usage of the trade allows greater quantity leeways; a clause reserving to the seller the power to cancel upon the buyer's failure to meet any invoice when due; a clause requiring that complaints be made in a time materially shorter than customary or reasonable.

5. Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: a clause setting forth and perhaps enlarging slightly upon the seller's exemption due to supervening causes beyond his control, similar to those covered by the provision of this Article on merchant's excuse by failure of presupposed conditions or a clause fixing in advance any reasonable formula of proration under such circumstances; a clause fixing a reasonable time for complaints within customary limits, or in the case of a purchase for sub-sale, providing for inspection by the sub-purchaser; a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for; a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance "with adjustment" or otherwise limiting remedy in a reasonable manner.

Illinois courts, in deciding whether particular clauses are material alterations, have looked to the Comment's formulation that a material alteration is one that would "re-

---

**1.** We do not address an argument that Schulze did not raise before the district court and raised first in its reply brief in this court, the argument that although Brady was Tree Top's agent, he lacked the specific authority to contract on Tree Top's behalf regarding arbitration.

sult in surprise or hardship if incorporated without express awareness by the other party." Under Illinois law, the test for whether an additional term would be a material alteration in the contract is "whether the addition constitutes an unreasonable surprise to one of the bargaining parties." *Clifford–Jacobs Forging Company v. Capital Engineering & Mfg. Co.*, 107 Ill.App.3d 29, 33, 62 Ill.Dec. 785, 437 N.E.2d 22 (4th Dist.1982). The *Clifford* court found no material alteration by a seller's additional clause that provided for an increase in the contract price if the seller's costs increased. The buyer's offer had contained a clause requiring the seller to notify the buyer of any increase in price. Because the buyer's offer thus contemplated an increase in the price, the court held that as a matter of law the seller's clause caused no unreasonable surprise.

By contrast, a clause does create unreasonable surprise, and therefore is a material alteration, where it disclaims warranties and limits remedies. *Album Graphics, Inc. v. Beatrice Foods Co.*, 87 Ill.App.3d 338, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1st Dist.1980). That holding is in accord with the specific examples given in the UCC Comment. An indemnification clause is also a material alteration. *McCarty v. Verson Allsteel Press Co.*, 89 Ill.App.3d 498, 44 Ill.Dec. 570, 411 N.E.2d 936 (1st Dist.1980).

No Illinois court has addressed the question whether addition of a clause providing for arbitration of disputes between the contracting parties is a material alteration. Some courts in other jurisdictions have held that to be a question that depends on the circumstances of each case. *E.g. N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir.1976). *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161 (6th Cir.1972). Other courts have followed the "New York rule" that addition of an arbitration clause is a material alteration. *John Thallon & Co. v. M & N Meat Co.*, 396 F.Supp. 1239 (E.D.N.Y.1975). *Frances*

*Hosiery Mills, Inc. v. Burlington Indus., Inc. (No. 2)*, 285 N.C. 344, 204 S.E.2d 834 (1974).

But even in New York, courts have held that addition of an arbitration clause is not a material alteration if the party had reason to know that such a clause would be included in a confirmation. *In re C.M.I. Clothesmakers, Inc.*, 85 Misc.2d 462, 380 N.Y.S.2d 447 (N.Y.Sup.Ct.1975). In *C.M.I.*, the court held that addition of an arbitration clause did not cause unreasonable surprise, and thus was not a material alteration, because the widespread use of arbitration clauses in the textile industry gave notice that such a clause was likely to be in the confirmation. *Accord, Klockner, Inc. v. C. Itoh & Company*, 17 U.C.C.Rep. 915 (N.Y.Sup.Ct.1975) (steel industry). These holdings support the sound premise that because a usage of trade gives a party notice that a confirmation is likely to contain an arbitration clause, the confirmation's inclusion of the clause is not an unreasonable surprise.

Subsequent to *C.M.I.* and *Klockner*, the New York Court of Appeals held in apparently absolute language that addition of an arbitration clause was always a material addition. *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978). But a year later the court also stated that an arbitration clause could be included in a contract through implication from the parties' past conduct or from the custom and practice in the industry. *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979). If a course of dealing or usage of trade could be used to include an arbitration clause in a contract where the parties' agreement is silent on the point, then the smaller step of concluding that one party's inclusion of such a clause was not a material alteration in the contract would seem logically compelled. We need not resolve the question because the present case is governed by the law of Illinois, not New York.[2] The reason that

---

**2.** We note the difficulty of squaring the *Schubtex* court's holding that "a litigant ought not to be forced into arbitration ... absent evidence of

an express intention to be so bound," *Schubtex*, 49 N.Y.2d at 5–6, 424 N.Y.S.2d at 135, 399 N.E.2d at 1156, with its dicta that "a provision

the *Marlene* court gave for holding that addition of an arbitration clause is *per se* a material alteration was not that the addition would constitute unreasonable surprise but rather the long-standing policy in New York that an arbitration clause is enforceable against a party only if he has made an unequivocal waiver of his right to settle disputes judicially. That does not conflict with the idea that a trade usage of using arbitration makes the inclusion of an arbitration clause not an unreasonable surprise. In Illinois, as discussed above, the sole test for the determination of the materiality of an alteration is whether the addition constitutes unreasonable surprise to one of the parties. A *per se* rule would forestall this inquiry.

In looking to whether trade usage would give notice to a contracting party that an arbitration clause would be included in a confirmation, the decisions in *C.M.I.* and *Klockner* are in accord with the UCC Comment, to which the Illinois courts have looked in applying § 2–207. That Comment gives as examples of nonmaterial alterations "a clause fixing a reasonable time for complaints *within customary limits*," "a clause providing for interest ... *within the range of trade practice*," "a clause limiting the right of rejection for defects which fall *within the customary trade tolerances*...." Examples of material alterations are "a clause negating such *standard* warranties ...," "a clause requiring a guaranty of 90% or 100% deliveries ... where the *usage of the trade* allows greater quantity leeways," "a clause requiring that complaints be made in a time materially shorter than *customary* or reasonable" (emphases added). In short, a party should not be surprised to find in a confirmation a clause of a type that is customarily used within the trade, whereas the clause is an unreasonable surprise where it represents an unreasonable or harsh deviation from custom.

■ In the present case, Tree Top did not offer proof of a trade usage of using arbitration to resolve disputes. But Tree Top did offer evidence of a prior course of dealing between the parties that would give notice to Schulze that an arbitration clause would likely be included in the confirmation. "A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." UCC § 1–205(1) (Ill.Rev.Stat., Ch. 26, par. 1–205(1)). The UCC gives even greater weight to a course of dealing than to usage of trade in construing the language of the contracting parties: when the two conflict, "course of dealing controls usage of trade." UCC § 1–205(4) (Ill.Rev.Stat., Ch. 26, par. 1–205(4)).

In *Barliant v. Follett Corporation*, 138 Ill.App.3d 756, 91 Ill.Dec. 677, 483 N.E.2d 1312 (1st Dist.1985), the court looked at a course of dealing between the parties in holding that the inclusion of additional transportation and insurance charges in an invoice was not a material alteration. Because the buyer had received and paid twenty-four previous invoices from the seller containing the same sort of charges there was "no unfair surprise."

This court has used similar logic under Indiana law. *Luedtke Engineering Co., Inc. v. Indiana Limestone Co., Inc.*, 740 F.2d 598 (7th Cir.1984). In that case, a buyer of breakwater stone included in its acceptance a clause requiring delivery of fifteen hundred tons of stone per day. This court held that the clause was a material alteration. In the parties' previous dealings, the seller had not been able to supply stone at a steady rate; factors such as bad weather and an inclement labor climate caused delays.

The results in *Barliant* and *Luedtke* reflect the policy of the UCC Comment, under which the clauses that are material alterations are those whose addition would result in "surprise or hardship if incorporated without express awareness by the other party." Where a party has received twenty-four invoices with a certain type of

---

for arbitration could in a proper case be implied from a course of past conduct or the custom and practice in the industry." 49 N.Y.2d at 6, 424 N.Y.S.2d at 135, 399 N.E.2d at 1156.

charge expressly listed, he should not be surprised if the twenty-fifth contains the same charge. The court will thus not require an express acknowledgment on his part that he was aware of the charge. By contrast, where the seller has in the past not been required to meet a consistent daily shipment requirement, addition of such a requirement would cause surprise. Before such a term becomes part of the contract, the court will require express awareness on the part of the seller.

In the present case, Tree Top's agent Brady had sent a confirmation form containing the same arbitration provision to Schulze in each of the previous nine transactions he brokered between the two parties. Schulze had ample notice that the tenth confirmation would be likely to include an arbitration clause. To prevent the clause from becoming part of the contract, Schulze needed only to give notice of objection within a reasonable time. As a matter of law, inclusion of such a clause in the tenth confirmation was not "unfair surprise." Therefore the addition of the arbitration clause was not a material addition to the contract, under the test used in Illinois law.

■ The next issue is whether Schulze's offer was one that "expressly limits acceptance to the terms of the offer" under § 2–207(2)(a). If so, under § 2–207(2)(a), additional terms in the acceptance do not become part of the contract. During the telephone conversation in which Park placed the order for apple powder, he informed Brady that the transaction was "subject to" Schulze purchase order I1621. Schulze never sent the purchase order to Brady or to Tree Top. The purchase order contained the proviso, "Additional or substitute terms will not become part of this contract unless expressly accepted by Buyer; Seller's acceptance is limited to the terms of this order, and no contract will be formed except on these terms." In two of the previous ten transactions between Schulze and Tree Top that Brady had brokered, Schulze had sent the purchase order to Brady.

Even assuming that the purchase order became part of the parties' contract, we hold that it was not, for the purposes of UCC § 2–207, an offer that *"expressly* limits acceptance to the terms of the offer." (emphasis added). This is not a case like *Lockheed Electronics Co. v. Keronix,* 114 Cal.App.3d 304, 170 Cal.Rptr. 591 (1981), where in both the disputed transaction and each of the preceding transactions the buyer sent to the seller a purchase order that expressly limited acceptance to the terms of the order. In this case, neither Brady nor Tree Top could have seen the purchasing offer with the limiting language. Although Schulze had sent a purchase order in two of the previous nine transactions, that is insufficient to give notice that mere reference to the number of a purchase order is intended "expressly" to make the order acceptable only on the terms in a purchase order that remains unseen. That indirect incorporation falls short of an "express" limitation.

Because the offer did not expressly limit acceptance to its terms and because, as discussed above, the addition of the arbitration clause was not a material addition to the contract, the arbitration clause became part of the contract under § 2–207(2).

### III

Schulze also contends that the arbitration clause is too vague to be enforced. The clause reads, in its entirety, "ALL DISPUTES UNDER THIS TRANSACTION SHALL BE ARBITRATED IN THE USUAL MANNER." Schulze does not cite a case in which the court has found an arbitration clause fatally vague, nor has our research unearthed one.

The arbitration clause in the present case was drafted by the broker Brady. In his deposition, Brady testified that he included the clause in the confirmation because arbitration was the customary method of settling business disputes during his "early years in the old country." He testified further that he intended arbitration to be conducted by the trade association or by the American Arbitration Association. When asked which trade association he

meant, he named the import association in Hamburg, Germany. He further stated that he probably included the words "in the usual manner" in the clause because they were in whatever confirmation form he had used as a model.

"In order for a contract to be binding, it must be definite and certain in all of its terms. It is sufficiently definite and certain, however, if the court is able from the terms and provisions thereof, under proper rules of construction and applicable rules of equity, to ascertain what the parties have agreed to do." *Gale v. York Center Community Cooperative, Inc.*, 21 Ill.2d 86, 171 N.E.2d 30, 34 (1961) (citations omitted).

What the clause requires the parties in the present case to do is clear: arbitrate all disputes. They did not provide such implementing details as who the arbitrators would be, where arbitration would take place, and what procedures would govern. But the district court was able to supply those details.

■ The Federal Arbitration Act expressly requires the court, at the behest of either party, to name an arbitrator when the parties' agreement has not named one. 9 U.S.C. § 5.[3] That arbitrator then acts with the same authority as if he had been designated by the parties' contract. The Act thus contemplates a clause like the clause in the present case, which does not specify the arbitrator. The district court, taking Brady's deposition testimony into account, held that the American Arbitration Association would arbitrate the dispute. The district court also held that the commercial arbitration rules of the American Arbitration Association would govern the proceedings. Such an order is consistent with the Act's provision that the arbi-

trator designated by the court will have the same authority as if he had been designated by the contract.

The Act also supplies the location of the arbitration. Under 9 U.S.C. § 4, "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

Thus, the clause is not too vague to be enforced. The district court was able to direct enforcement of the clause without resort to speculation and without writing a clause for the parties.

We note that the contract in this case was a contract between merchants for the sale of goods. The UCC provides several gap-filler provisions to prevent frustration of intended binding agreements through omission of terms, including § 2–305 (price), § 2–307 (delivery in single or multiple lots), § 2–308 (place of delivery), and § 2–309 (time provisions). Thus, in enforcing an unambiguous arbitration clause by directing arbitration of this commercial dispute by an established arbitration association in conformity with rules that have governed arbitration of many commercial disputes, the court was fulfilling the policy of the UCC.

## IV

For the reasons stated, the judgment of the district court is

AFFIRMED.

3. 9 U.S.C. § 5 reads, in its entirety:
If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbi- trators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.