**WAUKESHA FOUNDRY, INCORPORATED, Plaintiff–Appellee,**

v.

**INDUSTRIAL ENGINEERING, INCORPORATED, Defendant–Appellant.**

No. 95–3648.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1996.

Decided Aug. 1, 1996.

Dean P. Laing (argued), O'Neil, Cannon & Hollman, Milwaukee, WI, for Waukesha Foundry, Inc.

Allan D. Krezminski (argued), Elm Grove, WI, Paul B. McNellis, Wyss, McNellis, Riebenack & Myers, Fort Wayne, IN, for Industrial Engineering, Inc.

Before CUMMINGS, BAUER, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Article 2 of the Uniform Commercial Code reflects an effort to harmonize the law of contract with the complexities incidental to the purchase and sale of goods in today's world of sophisticated commercial relationships. Several provisions of the UCC guide a determination of the specific terms and conditions contained in a contract for sale between two parties. In particular, section 2–207 addresses the inclusion of proposed additional terms to a contract absent the express written agreement of the parties.

This appeal from a diversity case in the Eastern District of Wisconsin requires that we determine whether a course of dealing between parties to a contract operated to include proposed additional terms in that contract under Wisconsin's adopted version of the UCC.[1] We agree with the district court that the additional terms were incorporated into the parties' contract and affirm.

## I

### A

During the time relevant to this lawsuit, Industrial Engineering, Inc., which is located in Indiana, machined steel castings into molds for use by Corning Asahi Video Products, a subsidiary of Corning, Inc., in the manufacture of glass television picture tubes. In 1989, Industrial began to order steel castings from Waukesha Foundry, Inc., which is located in Wisconsin. In light of Corning's specifications, Industrial was concerned that the castings supplied by Waukesha be of high quality, particularly with respect to the surface of the castings that was to come in contact with the molten glass during Corning's production of the picture tubes. This contact surface had to be free of the imperfections or pronounced porosity caused by inclusions or gas bubbles. According to Industrial, such defects were fatal, for Corning's specifications did not allow for the repair of these defects by welding because the repaired defect would manifest itself on the surface of the picture tube.

Industrial and Waukesha commenced their relationship and entered into a series of contracts for the sale of metal castings. The typical deal was fairly straightforward. Industrial would telephone Waukesha and place an order for a particular number of castings and then fax a confirming purchase order. The parties disagree over whether Waukesha would then send an acknowledgment form confirming the order.[2] After manufacturing the castings, Waukesha would ship the order to Industrial. It is undisputed that Waukesha enclosed with each order a packing slip and followed each shipment with an invoice. Printed on each packing slip and invoice was

---

1. Wisconsin has incorporated in its statutory laws the provisions of the UCC without material alteration, and so we will use the standard UCC numbering system. *See ProCD, Inc. v. Matthew Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir.1996). The corresponding Wisconsin citations are easily derived; e.g., UCC § 2–207 corresponds to Wis. Stat. § 402.207, and so on.

2. This dispute arises in the affidavits of the managers and officers of each company. Harry P. Laffkas, the president of Industrial, states in an affidavit that he never received or saw an acknowledgement form from Waukesha. However, Barry A. Kerwin, the president of Waukesha, claims that Waukesha sent an acknowledgement form in confirmation of each purchase order.

a list of terms and conditions of sale, which included the following:

> Buyer agrees he has full knowledge of the conditions printed below, and that the same shall be the sole terms and conditions of the agreement between Buyer and Seller and shall be binding if either (1) the goods referred to herein are delivered to and accepted by Buyer, or (2) if Buyer does not within ten days from date of the Seller's acknowledgment deliver to Seller written objections to said conditions or any part thereof.

Paragraph eight of the conditions of sale, entitled "Warranty," reads as follows:

> If the products sold hereunder are defective at the time of delivery in material and workmanship and written notice thereof is given to Seller no later than one (1) year (in case of pumps) or ninety (90) days (in case of foam generators and all other products) after shipment to Buyer, Seller, reserving the right to either inspect such defective products in the field or request their prepaid return to Seller will at its option repair or replace or give equitable credit or refund for such products determined by Seller to be defective provided that the products shall not have been altered or repaired by anyone except Seller's authorized representatives or operated contrary to Seller's instructions or subjected to misuse, operator negligence or accident.... IT IS EXPRESSLY AGREED THAT NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR USE, NOR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, IS MADE BY SELLER HEREUNDER. THE FOREGOING STATES SELLER'S ENTIRE AND EXCLUSIVE LIABILITY AND BUYER'S EXCLUSIVE AND SOLE REMEDY FOR ANY CLAIM OF DAMAGES IN CONNECTION WITH THE SALE OF THE PRODUCTS HEREUNDER. SELLER WILL IN NO EVENT BE LIABLE FOR ANY SPECIAL OR CONSEQUENTIAL DAMAGES WHATSOEVER.[3]

Industrial placed sixty orders with Waukesha between 1989 and 1993, and Waukesha claims that it sent Industrial a total of sixty acknowledgement forms, 234 packing slips, and 234 invoices during this four-year period.

There is evidence that some of the castings contained imperfections requiring repair and that Industrial weld repaired many of these defective castings with Corning's permission. Mr. Laffkas, Industrial's president, testified at his deposition that the parties negotiated an arrangement in these cases whereby Industrial would notify Waukesha of the defect and subsequent repair and Waukesha would then give Industrial an equitable credit of 10 percent of the casting's cost. Mr. Laffkas also testified that if the repairs were unsuccessful, Industrial would return the defective casting to Waukesha for replacement at no additional cost. He noted, however, that Industrial would absorb the costs of its failed repair attempt and of the missed deadlines for delivery to Corning. In any event, it appears from Mr. Laffkas's testimony that Industrial availed itself of the remedy provisions contained in Waukesha's transmitted documents on several occasions.

Neither party has offered a precise assessment of how many defective castings Waukesha delivered to Industrial. It appears that Industrial began to track the incidence of faulty castings and to submit documentation to Waukesha identifying faulty castings and seeking credit sometime in 1992. Both parties agree that according to Industrial's records, 31 percent of the castings inspected between April and December 1992 were defective. Industrial claims that it requested $30,407.94 in credit but received only $6,050.81 from Waukesha. The last shipment of castings was delivered sometime around early March 1993.

The evidence suggests that the parties operated under an agreement of net payment thirty days after delivery of the castings. However, in August 1992, Waukesha determined that it would no longer extend thirty-day credit to Industrial and notified Industrial that payment would henceforth be "COD." Mr. Kerwin, Waukesha's president, stated in

---

**3.** Waukesha states that this is an exact duplication of the terms and conditions printed on its acknowledgement form, which it claims to have sent to Industrial on the occasion of each order.

an affidavit that Waukesha decided to change the payment terms because of Industrial's delayed payments and outstanding invoices in the summer of 1992 totaling more than $250,000. Industrial did not agree to this change of payment terms, and thus ended the relationship. At the time the parties terminated their dealings, Waukesha had manufactured ninety-one castings pursuant to Industrial's last order, but Waukesha never shipped these castings.

### B

Waukesha filed a lawsuit against Industrial in Wisconsin state court on May 12, 1993, alleging that Industrial owed it $256,304.99 on outstanding invoices. Industrial removed the case to the Eastern District of Wisconsin on June 7, 1993, and filed a counterclaim on February 18, 1994, alleging that it had suffered cumulative losses of $1.2 million as a result of Waukesha's failure to deliver conforming castings in a breach of the parties' contract.

Waukesha filed a motion *in limine* to preclude Industrial from seeking any damages or adducing any evidence based upon its counterclaim. Waukesha characterized Industrial's counterclaim as "an afterthought attempt to reduce its undisputed liability to Waukesha Foundry on the unpaid invoices" and argued that under the UCC, it had properly limited remedies available to Industrial in the event of a breach by virtue of the express language contained in the acknowledgement forms, packing slips, and invoices. Waukesha stated that Industrial had accepted all the castings after being advised of these terms and had never objected to the terms. Waukesha also claimed that Industrial's return of castings for replacement and requests for credit constituted express acknowledgement and acceptance of these terms.

In opposition to Waukesha's motion, Industrial highlighted what remains an important factual dispute; it claimed that Industrial personnel "did not generally receive any written acknowledgment from [Waukesha] prior to receipt of the castings." Based on this fact, Industrial claimed that its telephone orders were acceptances of Waukesha's offers to sell and that its written purchase orders sealed the deals pursuant to the writing requirement of the statute of frauds contained in UCC § 2–201(1). It also stated that even if the limitation of remedies clause were enforceable, it failed of its essential purpose according to UCC § 2–719(2).

The district court granted Waukesha's motion on September 13, 1995, treating it as a motion for summary judgment on Industrial's counterclaim. The district court found that the course of dealing between the parties operated to add the additional terms containing the remedy limitations and warranty disclaimers to the contract. It then found that these terms did not fail of their essential purpose under UCC § 2–719. The district court subsequently indicated that it viewed its ruling on the motion *in limine* effectively to have eliminated any issue of fact deserving of a trial and scheduled a hearing on October 23.

Both parties presented evidence at the October 23 hearing. Waukesha orally moved for summary judgment on its claims for damages and submitted evidence that it believed illustrated the lack of any genuine issue of fact deserving of a trial by virtue of the district court's decision respecting its earlier motion *in limine*. Industrial argued that it was not appropriate to grant summary judgment to Waukesha and offered evidence to demonstrate the existence of several important factual issues. The district court took all this evidence and allowed the parties until October 30 to submit whatever additional materials they deemed relevant to their respective positions.

On October 30, Industrial moved for an extension of time in which to file additional materials in support of its argument. The sum and substance of this motion, which culminated Industrial's pattern of delaying and extending court-imposed deadlines during the pendency of this litigation, was that Industrial needed more time to assemble its argument why Waukesha was not entitled to summary judgment. Industrial claimed that the lack of notice of Waukesha's oral motion for summary judgment pursuant to FED. R. CIV. P. 56 had left it inadequate time in which

to respond. The district court denied Industrial's motion and entered summary judgment in favor of Waukesha in the amount of $295,042.17.

Industrial offers several arguments on appeal. First, it identifies disputed issues of material fact that it claims precluded the district court from granting summary judgment in favor of Waukesha. It suggests that the circumstances attending the formation and execution of the contracts for the sale of castings do not show that it consented to the limited remedies iterated on Waukesha's acknowledgement forms, packing slips, and invoices. Because it did not consent to these additional terms, argues Industrial, it retained the default remedies available under the UCC. As a fallback position, Industrial argues that even if the limitation of remedies did become part of the contracts between it and Waukesha, those remedies failed of their essential purpose under UCC § 2–719(2).

Neither of Industrial's other arguments address its substantive liability. It states that Waukesha has failed to take the required steps to mitigate its damages by making no effort to sell, or recoup some value from, the ninety-one castings that sit idle on Waukesha's shipping dock. Industrial also claims that the district court abused its discretion in denying it a four-day extension of time in which to file a response to Waukesha's oral motion for summary judgment.

## II

### A

It is undisputed that Industrial and Waukesha were parties to a series of bilateral contracts for the sale of castings, but certain facts surrounding the formation and modification of these contracts are in dispute. Our attention is focused upon the particulars of the course of dealing between Waukesha and Industrial and the manner in which, if at all, their pattern of conduct may inform our inquiry under the UCC. Several provisions of the UCC, as adopted by Wisconsin, provide guidelines for deciding this appeal by

illuminating the requirements of contract formation and modification in a course of dealing between merchants.

Primary among the relevant provisions is section 2–207, which governs the addition of proposed terms to otherwise concluded contracts between merchants for the sale of goods. Part of our analysis under that section concerns the parties' course of dealing, and so the provisions of UCC § 1–205 will also figure in our analysis. This section addresses the course of dealing by parties in an ongoing trade relationship and how that course of conduct may inform the precise contours of the actual agreement between the parties.[4] However, the question of whether additional terms become part of a contract is primarily the province of UCC § 2–207 and the gloss we have applied to it in several cases beginning with *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709 (7th Cir.1987).

### B

The procedural context of this appeal requires a brief comment. The district court treated Waukesha's motion *in limine* as a motion for summary judgment. Having decided that motion, the court then opined that there seemed little left to argue about and gave the parties a chance to prove that prediction right or wrong. As noted, the court determined that there was no remaining triable issue and entered judgment for Waukesha. Industrial has assigned error to both decisions, but as its arguments demonstrate, the district court's first decision forms the heart of the matter. In our determination of this appeal, we will address all of Industrial's arguments but will not break them out with respect to the individual decisions by the district court. Instead, we focus upon what counts: the question of whether the limitation of remedies became a part of the contract between the parties, and if so, whether it failed of its essential purpose.

█ In reviewing a district court's grant of summary judgment, we assess the record

---

**4.** We use the term "agreement" in conformity with the usage of that term in the UCC, where the course of dealing or performance under a

contract of sale is "relevant to determine the meaning of the agreement." UCC § 2–208(1).

*de novo.* There is no real "review" of the district court's findings; we reach our own conclusions of law or fact (or a hybrid of the two) as they flow from the record before us. *See Thiele v. Norfolk & Western Ry. Co.,* 68 F.3d 179, 181 (7th Cir.1995). This plenary review of the evidence requires that we employ the standard prescribed by FED. R. CIV. P. 56(c) and determine whether the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ It is not our function to resolve factual disputes nor to weigh conflicting evidence; we are only to determine if a genuine issue of material fact exists for trial. Such an issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If no such issue exists, the sole question is whether the moving party is entitled to judgment as a matter of law. In reaching a conclusion as to the presence of a genuine issue of material fact, we must view the evidence and draw all inferences in a way most favorable to the nonmoving party. *Tolentino v. Friedman,* 46 F.3d 645, 649 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). But our favor toward the nonmoving party does not relieve it of the obligation to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### III

### A

■ Industrial and Waukesha reached an agreement for each shipment of castings by virtue of Industrial's placement of an order via the telephone and Waukesha's acceptance of that order. *See* UCC § 2–206(1). Industrial then faxed a confirming purchase order to Waukesha. Waukesha claims that following its receipt of each purchase order, it sent Industrial an acknowledgement form confirming the order that contained the terms and conditions of sale excerpted above. Industrial states that Waukesha "did not issue any acknowledgement forms." It bases this assertion on the affidavits of its president, manager of production, and manager of purchasing, all of whom deny ever having received acknowledgement forms.

At first blush, this seems to establish a genuine factual issue, but the question is whether this issue is material to a disposition of this case. We conclude that it is not. There is no need to identify at precisely what point in time each contract of sale between Industrial and Waukesha came into being, for the course of conduct by both parties demonstrates the existence of a series of contracts for the sale of castings. *See Step–Saver Data Sys., Inc. v. WYSE Technology,* 939 F.2d 91, 98 (3d Cir.1991); *see also* UCC §§ 1–205, 2–208. On sixty occasions between 1989 and 1993, Industrial called Waukesha with an order for steel castings. Following each order, Waukesha manufactured and shipped the castings to Industrial. There can be no dispute that this ongoing course of conduct manifested the existence of contracts for the sale of goods between Industrial and Waukesha. The $64,000 (or, in this case, $295,042.17) question is: What terms were part of these contracts?

Whatever the truth may be about the acknowledgement forms, it is clear that the parties exchanged writings containing different terms. Industrial faxed a purchase order for each shipment to Waukesha. Waukesha enclosed with every shipment of castings a packing slip that contained the terms and conditions of sale referenced above and followed each shipment with an invoice that also included these terms and conditions. Once the existence of a contract is established, we must refer to UCC § 2–207(2) to determine which, if any, additional terms contained in subsequent written confirmations become part of the agreement. *See Trans–Aire Int'l, Inc. v. Northern Adhesive Co., Inc.,* 882 F.2d 1254, 1260 (7th Cir.1989); *C. Itoh & Co. (America), Inc. v. Jordan Int'l Co.,* 552 F.2d

1228, 1233 (7th Cir.1977). Under the guidance of our prior decisions discussing the addition of terms to a contract in the context of a course of dealing, we find that the terms and conditions contained in Waukesha's packing slips and invoices became part of each contract of sale between Industrial and Waukesha and are enforceable against Industrial as found by the district court.

### B

Once a contract of sale is established, UCC § 2–207 determines whether additional terms are made a part of that contract.[5] In cases involving merchants (such as this one), there are three circumstances that preclude the incorporation of additional terms contained in written confirmations into a contract of sale. It is the second of these three circumstances that is relevant to this appeal, namely, when the additional terms "materially alter" the contract. UCC § 2–207(2)(b). The district court determined that "[c]ourts in Wisconsin and elsewhere generally consider warranty disclaimers and limitations of remedies to be 'material alterations.'" Although the district court cited to two cases of potentially persuasive authority for this decision, *Air Products & Chem., Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 206 N.W.2d 414 (1973), and *Western Indus., Inc. v. Newcor Canada, Ltd.,* 739 F.2d 1198 (7th Cir.1984), we do not share its interpretation of the term "material."

The district court's analysis appears to assume that certain terms may be *per se* material without regard to the context in which they are proposed or the course of dealing between the parties. It may be true that complete disclaimers of liability would command such a *per se* rule, as seems to have

happened in Wisconsin. *See, e.g., Air Products,* 206 N.W.2d at 421, 425; *see also Phillips Petroleum Co. v. Bucyrus–Erie Co.,* 131 Wis.2d 21, 388 N.W.2d 584, 589–90 (1986); *Resch v. Greenlee Bros. & Co.,* 128 Wis.2d 237, 381 N.W.2d 590, 593 (1985). But the thrust of our prior decisions analyzing the materiality of additional terms counsels against an across-the-board categorical approach to the materiality question. Instead, we have viewed the question of materiality as invoking an inquiry into the circumstances of the parties' relationship, expectations, and course of dealing. As with so many other aspects of contract law, the question of materiality is marked by relativity.

■ Our decision in *Western Industries* hinted at this approach to the materiality inquiry. In that case, the term at issue was the deletion of a remedy for consequential damages, and we wrote that this would be a material alteration. 739 F.2d at 1205. The linchpin of our analysis, however, was that this term would operate to alter terms that the UCC read into contracts otherwise silent on these points. *Id.* Our concern in *Western Industries* was that because the parties contracted with the expectation that the UCC would govern their relationship, a party's consent to the deletion of UCC-provided remedies could not be presumed.

Our recent decisions have further expanded upon this doctrinal approach to section 2–207(2). *See, e.g., Union Carbide Corp. v. Oscar Mayer Foods Corp.,* 947 F.2d 1333, 1336–37 (7th Cir.1991); *Schulze,* 831 F.2d at 712–13. As correctly stated by the district court, *Union Carbide* offered a concise summary of our test for the inclusion of additional terms under section 2–207:

**5.** That section reads as follows:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Act.

UCC § 2–207.

[A] term inserted by the offeree is ineffectual (1) if the offer expressly limits acceptance to the terms of the offer, or (2) if the new term (a) makes a material alteration, in the sense that consent to it cannot be presumed, and (b) there is no showing that the offeror in fact consented to the alteration—whether (i) expressly, or (ii) by silence against the background of a course of dealings.

947 F.2d at 1337. We proceeded to find that it would be inappropriate to infer consent to incalculable and open ended liability from silence in the face of a series of acceptances containing the additional term. *Id.* at 1337–38. Likewise, in *Schulze*, we determined whether a course of dealing between parties foreclosed a claim of unfair surprise by the party against whom the additional term was claimed to be enforceable. 831 F.2d at 714–15.

An alteration is material if the party against whom it is sought to be enforced would be ambushed by its addition to the contract. In such circumstances, consent to the alteration cannot be presumed. *See Union Carbide*, 947 F.2d at 1336. As our analysis in *Schulze* demonstrates, however, consent may be presumed from something less than lack of surprise. In that case, our determination of unfair surprise was favorably illuminated by consideration of UCC § 1–205, which addresses course of dealing and usages of trade. 831 F.2d at 714. It is hardly earth-shattering that this section should inform our approach to section 2–207(2), for our discussion above should indicate that the rule of materiality is not ironclad. As we said in *Union Carbide*:

> Even if the alteration is material, the other party can, of course, decide to accept it.... Put differently, consent can be inferred from other things besides the unsurprising character of the new term: even from silence, in the face of a course of dealings that makes it reasonable for the other party to infer consent from a failure to object.

947 F.2d at 1336.

## C

■ The facts in this case that are undisputed lead to the ineluctable conclusion that Industrial consented to the terms and conditions contained in the more than four hundred packing slips and invoices it received from Waukesha from 1989 until 1993. In fact, undisputed evidence demonstrates that Industrial availed itself of these remedies by returning defective castings for replacement and by requesting equitable credit for its own repairs. These two merchants were engaged in an ongoing and (we assume) mutually beneficial trade relationship until it soured in 1993. Part of the reason for the demise of this relationship appears to be Industrial's growing financial difficulties, which led Waukesha to change the payment terms from thirty days net to COD. Industrial may not foist its own financial difficulties onto Waukesha's shoulders by now claiming that it knew nothing of the terms and conditions Waukesha proposed in the course of performance under the sixty contracts for sale into which the two parties entered over a four-year period.

Industrial had many opportunities to clarify or memorialize its objection(s) to any facet of its relationship with Waukesha. In fact, the record demonstrates that there was a substantial degree of interpersonal contact between employees of the two companies in an effort to alleviate Industrial's concerns with the quality of the castings and to address the costs visited upon Industrial by its own efforts to mitigate those quality problems.

## IV

Industrial offers two additional arguments that merit at least some comment. On the question of its liability to Waukesha for the outstanding invoices, Industrial's fallback position is that even if it did consent to the additional terms through a course of dealing, the remedy limitations fail of their essential purpose as envisioned by UCC § 2–719(2). In an attempt to reduce its damages liability, Industrial argues that Waukesha was obligated to mitigate damages by trying to sell the ninety-one castings that it never shipped to Industrial but for which it claims Industrial

is accountable. Finally, Industrial suggests that the district court abused its discretion in denying a four day extension of time in which to file an opposition to Waukesha's motion for summary judgment. We address these arguments *seriatim.*

 Section 2–719(2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." This section may be triggered "when the remedy fails of its essential purpose, not the essential purpose of the [UCC], contract law, or equity." 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 12–10, at 660 (4th ed. 1995). If a buyer demonstrates the impotence of the contractually established remedy under section 2–719(2), he may then avail himself of the remedies provided elsewhere in the UCC. This section generally applies when the remedy is ineffectual or when the seller fails to live up to the remedy's provisions, either of which deprives the buyer of the benefit of the bargain. *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.,* 830 F.2d 1405, 1412 (7th Cir.1987); *see also* UCC § 2–179 cmt. 1.

 Industrial has failed even to come close to showing that the contract failed to provide it with "a fair quantum of remedy" for Waukesha's breach of its obligations under the agreement. *See Phillips Petroleum,* 388 N.W.2d at 592. Nor has Industrial demonstrated that the cumulative effect of Waukesha's deliveries of nonconforming castings substantially deprived Industrial of the benefit of the bargain. *See Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513, 521 (1978). The facts demonstrate that the contractual remedies operated as they were designed and that Waukesha complied with its obligations to replace any defective castings or to provide equitable credit when so requested by Industrial.[6] It is not enough to trigger section 2–719(2) that Waukesha may have delivered nonconforming goods; Industrial must demonstrate that this breach, whether isolated or otherwise, caused it harm that the contractual remedy was incapable of curing. It has failed to make this showing.

Industrial's remaining arguments do not deserve sustained attention. Its assertion that Waukesha failed to mitigate damages is close to duplicitous. There is undisputed evidence in the record that on two occasions after the relationship went south, Industrial directed Waukesha not to attempt to melt down or otherwise recoup any value from the ninety-one castings at issue because they might be of potential evidentiary importance. Industrial issued these written directives to Waukesha in July and September 1993, and its attempt now to escape the consequences of its earlier conduct is patently meritless.

We are likewise unimpressed with its argument that the district court abused its discretion in denying Industrial yet another extension of time in which it might comply with the district court's calendar. Once again, the record fatally undermines Industrial's position. As counsel for Waukesha argued at the October 23 hearing, the record is replete with examples of Industrial's abiding attempts to delay or postpone the resolution of this lawsuit, perhaps illustrating its early recognition of the inevitable outcome.

\* \* \*

*Pacta sunt servanda,* or, "a deal's a deal." *Industrial Representatives, Inc. v. CP Clare Corp.,* 74 F.3d 128, 132 (7th Cir.1996). Industrial Engineering had a deal with Waukesha Foundry, and this deal included the limitation of remedies contained in the hundreds of packing slips and invoices that it received over a four-year period. Under section 2–207 of the UCC, the additional terms contained in these documents became a part of the contracts for the sale of castings and are enforceable. The judgment of the district court is AFFIRMED.

---

6. Counsel for Waukesha represented to the district court at the October 23 hearing that it was prepared to cede Industrial's claims for equitable credit not already settled.