978 F.2d 1185
 The AMERICAN INSURANCE COMPANY, a New Jersey corporation,
Plaintiff-Appellee,
v.
EL PASO PIPE AND SUPPLY CO., a Texas corporation, doing
business under the names of EPPSCO Electrical Supply Co. and
EPPSCO Electrical Supply, and General Electric Company, a
New York corporation, Defendants-Appellants.
 Nos. 91-2070, 91-2072.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 2, 1992.
 
 1
 Briggs F. Cheney (Rodney L. Schlagel with him on the brief) of Butt, Thornton & Baehr, Albuqueque, N.M., for plaintiff-appellee.
 
 
 2
 Rex D. Throckmorton (Odgen M. Reid and James P. Bieg with him on the brief) of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for defendant-appellant General Elec. Co.
 
 
 3
 Cameron Peters, Kemp, Smith, Duncan & Hammond, Santa Fe, N.M., for defendant-appellant El Paso Pipe and Supply Co.
 
 
 4
 Before LOGAN, TACHA, Circuit Judges, and COOK, Senior District Judge.*
 
 
 5
 H. DALE COOK, Senior District Judge.
 
 
 6
 This action arose out of the construction of the Veteran's Administration Hospital in Albuquerque, New Mexico. The Brown-Olds Corporation (Brown-Olds) was the subcontractor responsible for providing all labor and material for the construction of the mechanical and electrical segments of the project. General Electric (GE) and its distributor El Paso Pipe and Supply Company (EPPSCO) were the successful bidders to supply the electrical equipment to Brown-Olds.
 
 
 7
 During the course of negotiations between GE and Brown-Olds for the contract to supply the equipment for the project, GE made oral and written representations concerning service, equipment, delivery schedules, and price. On June 9, 1983 GE sent a 19-page list of materials to Brown-Olds. This written quotation had the following provision:
 
 
 8
 "Sale of any products or services covered by this quotation is conditioned upon the terms contained herein (including those on back of this letter). Any additional or different terms proposed by Buyer are objected to and will not be binding upon Seller unless specifically assented to in writing by Seller's authorized representative."
 
 
 9
 GE's quotation also provided, "unless otherwise stated, this quotation ... expires 15 days from its date and may be modified or withdrawn by Seller prior to any acceptance...."
 
 
 10
 This 15-day limit was never officially extended. However, GE and Brown-Olds continued to negotiate the bid. On October 3, 1983 Brown-Olds sent its purchase order to GE in care of EPPSCO. The purchase order enumerated materials, price, shipping schedules, and specifications to be observed.
 
 
 11
 The back of the purchase order had several boiler-plate terms and conditions. Paragraph 15(b) of the purchase order was an integration clause stating that the purchase order and any written attachments constituted the entire agreement of the parties and all prior oral and written communications were withdrawn. Paragraph 15(d) provided:
 
 
 12
 "In the event there should be legal action in connection with this Purchase Order, then if the Seller is not the prevailing party in such action, Seller agrees to pay the reasonable legal fees and other costs incurred in such legal action by the Purchaser."
 
 
 13
 During the course of the project Brown-Olds became bankrupt and its bonding company, American Insurance Company (American), assumed responsibility for completion of the construction. American, as Brown-Old's successor-in-interest, initiated this diversity action in federal court on August 7, 1989 against GE and EPPSCO. It alleged breach of contract, breach of warranty, and negligence in furnishing electrical equipment to the construction project.
 
 
 14
 The case was tried before a jury on October 11-19, 1989. The jury determined that a contract existed between Brown-Olds and both GE and EPPSCO. The jury also determined that both GE and EPPSCO breached the contract and warranties. However, the jury found that American's damages of $34,114.14 resulted from GE's breach of contract alone. Therefore, EPPSCO was not found liable for any of American's damages.
 
 
 15
 Following the trial, American moved for an award of attorney fees and costs based on the contractual provision located on the back of the purchase order. Although the jury determined that a contract existed between Brown-Olds and both GE and EPPSCO, it was never asked to determine if the purchase order was the operative agreement between the parties. It, therefore, was also not asked to determine whether the attorney fee provision was a term of the contract. Pursuant to Fed.R.Civ.P. 49(a) the trial court found that GE and EPPSCO waived their right to have the jury decide these issues.[1] Therefore, the court made the determinations itself and granted American's motion. It awarded American $158,355.70 in attorney fees and $17,909.06 in costs.
 
 
 16
 The court first stated that the substantive law of New Mexico would be applied in this diversity action. It then noted that under the law of New Mexico recovery of attorney fees is permitted if their recovery is provided for in a contract, citing Hickey v. Griggs, 106 N.M. 27, 738 P.2d 899 (1987). It determined that the primary purpose of the contract in question was the sale of goods and, therefore, the provisions of the Uniform Commercial Code (UCC) controlled. N.M.Stat.Ann. Sec. 55-1-101 et seq. (1978); State v. Kent Nowlin Constr., Inc., 106 N.M. 539, 746 P.2d 645 (1987). The court then referred to UCC section 2-207(1) which provides:
 
 
 17
 "A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."
 
 
 18
 N.M.Stat.Ann. 55-2-207(1) (1978). It found that the Brown-Olds purchase order was a written confirmation of the parties' agreement as envisioned by this statute.
 
 
 19
 Next the court referred to UCC section 2-207(2) which states:
 
 
 20
 "The additional terms are to be construed as proposals for addition to the contract. Between merchants, such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."
 
 
 21
 N.M.Stat.Ann. Sec. 55-2-207(2) (1978). The court determined that GE, EPPSCO, and Brown-Olds were all merchants for purposes of this discussion, citing Cement Asbestos Products v. Hartford Accident & Indemnity Co., 592 F.2d 1144 (10th Cir.1979). It therefore concluded that the additional terms in the Brown-Olds purchase order were terms of the agreement unless they fell into one of the section 2-207(2) exceptions.
 
 
 22
 The court rejected the argument that the June 9, 1983 GE quotation was an offer that expressly limited the acceptance to the terms of the offer under exception (a).[2] The court then rejected the argument that the GE quotation operated as notice of objection to the attorney fees provision in the purchase order under exception (c).[3] None of the above conclusions are at issue on appeal.[4]
 
 
 23
 GE and EPPSCO appeal the award of attorney fees and costs to American.[5] They challenge the court's finding that the attorney fees provision in the Brown-Olds purchase order does not constitute a material alteration to the parties' agreement. Appellants also assert that the court erred in its conclusions regarding prevailing party status in the case and the reasonableness of the fee award.
 
 A. Material Alteration
 
 24
 In reviewing the district court's decision concerning whether the attorney fees provision materially altered the agreement between the parties we apply the clearly erroneous standard. Transamerica Oil Corp. v. Lynes, Inc., 723 F.2d 758, 763 (10th Cir.1983). A district court's findings will be overturned under the clearly erroneous standard when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 25
 The New Mexico courts have not yet decided the issue of whether an attorney fee provision constitutes a material alteration to a contract.[6] The district court based its decision regarding this issue on the reasoning set forth in a Colorado Court of Appeals case, Offen, Inc. v. Rocky Mountain Constructors, 765 P.2d 600 (Colo.Ct.App.1988). Appellants argue that though the Offen case is similar to the case at bar, there is an important disparity between the facts of the two cases which the district court ignored. We agree. Furthermore, we believe the district court misinterpreted the Offen case. We, therefore, find that the district court's reliance on that case was misplaced and its opinion does not adequately reflect the analysis required under UCC 2-207(2)(b).
 
 
 26
 The Offen case involved an additional term in the plaintiff's delivery tickets which provided that an 18% interest rate and attorney fees would be owed if a collection action was necessary. Id. at 600. Invoices which contained similar language in bold face type were mailed after delivery. Id. These invoices were found to be written confirmations of the terms earlier agreed upon by the parties. Id. at 601. Both parties were merchants and defendant never objected to the clause. Id. The court was asked to determine whether the additional term materially altered the agreement between the parties. It held that it did not.
 
 
 27
 In evaluating what constitutes a material alteration the Offen court correctly looked to the Official Comments to UCC 2-207 for guidance. Official Comment 4 states that an addition to a contract is a material alteration when it "results in surprise or hardship if incorporated without the express awareness by the other party." Comment 4 also lists several examples of provisions that constitute material alterations and Comment 5 lists some examples of those that do not. An attorney fee provision is not included in either list.
 
 
 28
 The Offen court began its discussion by referring to Comment 5 which states: "[E]xamples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are ... a clause providing for interest on overdue invoices...." 765 P.2d at 601. The court then found that the "concept implicit in this statement applies to the interest and attorney fee provision included on the invoice at issue here." Id.
 
 
 29
 We can readily understand why the Offen court would find that the provision allowing for interest on overdue invoices became a part of the agreement. It is precisely one of the examples of clauses that do not constitute material alterations listed in Comment 5. In addition, "it is common in commercial circles, including transactions with non-merchants, for balances to be subjected to interest charges." Herzog Oil Field Service, Inc. v. Otto Torpedo Co., 391 Pa.Super. 133, 137, 570 A.2d 549, 551 (Penn.1990). We, however, fail to see how it could be said that the concept implicit in the Comment 5 language quoted by the court applies to an attorney fee provision.[7] "[A]n attorney's fee provision is considerably less common than an interest rate provision; thus, it would not be as readily expected or anticipated." Id.
 
 
 30
 The majority of courts reviewing whether an addition to a contract constitutes a material alteration hold that it depends on the unique facts of every case. Luedtke Eng. Co. v. Ind. Limestone Co., 740 F.2d 598, 600 (7th Cir.1984); Transamerica, 723 F.2d 758, 765 (10th Cir.1983); N & D Fashions, Inc. v. DHJ Industries, Inc., 548 F.2d 722, 726 (8th Cir.1977); Medical Development Corp. v. Industrial Molding Corp., 479 F.2d 345, 348 (10th Cir.1973); St. Charles Cable TV v. Eagle Comtronics, Inc., 687 F.Supp. 820 (S.D.N.Y.1988). Determining whether a term results in surprise or hardship "requires the trial court to make a factual evaluation of the parties' position in each case." Luedtke, 740 F.2d at 600.
 
 
 31
 The district court in the present case failed to make the proper factual findings. Instead the court relied on the Offen court's conclusory statement that an attorney fee provision is similar to examples of other clauses that are not considered material alterations listed in the Official Comments to UCC 2-207. The court appears to have read the case as standing for the proposition that an attorney fees provision will never involve unreasonable surprise or hardship. We disagree with this proposition as well as this interpretation of Offen.
 
 
 32
 Unlike the district court in this case, the Offen court considered the facts of the case before it as they pertained to the attorney fees provision. See Comark Merchandising, Inc. v. Highland Group, Inc., 932 F.2d 1196, 1203 n. 8 (7th Cir.1991). Based on those facts it gave a sound reason why the provision should not have surprised the defendant:
 
 
 33
 "The transactions between the parties established that invoices would follow purchase orders, and since [defendant] had received numerous invoices during their course of dealing, the term regarding attorney fees should have come as no surprise to [defendant]."
 
 
 34
 Offen, 765 P.2d at 601.
 
 
 35
 In the instant case there was no prior course of dealing between the parties and there was only one written confirmation. Consequently, this case and the Offen case are distinguishable. However, a single written confirmation and the absence of a prior course of dealing may not necessarily indicate that GE and EPPSCO were unreasonably surprised.
 
 
 36
 UCC 2-207 "in essence supplies a presumption that the additional terms contained in confirmation forms are not read by the opposing party." Dale R. Horning Co. v. Falconer Glass Industries, 730 F.Supp. 962, 966 (S.D.Ind.1990). Comment 4 to UCC 2-207 states that surprise occurs "when a term is included without the express awareness of the other party." Comark, 932 F.2d at 1202 n. 7 (emphasis in original). "[A]wareness does not necessarily require a party actually to have read the additional term." Id. Therefore, on the issue of surprise there is both a subjective and an objective element to the inquiry. Dale R. Horning Co., 730 F.Supp. at 966. Courts should first make factual findings as to whether a nonassenting party subjectively knew of an added term. It must then make findings of fact concerning whether that party should have known that such a term would be included. Id.
 
 
 37
 In the case at bar the district court found that at trial American met its burden of establishing that GE saw the purchase order.[8] The court did not, however, make any findings of fact pertaining to whether GE or EPPSCO knew about or should have known about the added attorney fee provision.
 
 
 38
 There are many factors that courts properly consider when determining whether a party to a contract was unreasonably surprised by an additional term. As mentioned above, a prior course of dealing and the number of written confirmations exchanged between the parties is important to evaluate. Comark, 932 F.2d at 1202; Schulze and Burch Biscuit Co. v. Tree Top, Inc., 831 F.2d 709, 714 (7th Cir.1987); Barliant v. Follett Corp., 138 Ill.App.3d 756, 91 Ill.Dec. 677, 681, 483 N.E.2d 1312, 1316 (1985); Offen, 765 P.2d at 601. In addition, absence of industry custom should be regarded. Comark, 932 F.2d at 1202-03. Courts should also consider whether the addition was clearly marked on the written confirmation. Barliant, 91 Ill.Dec. at 681, 483 N.E.2d at 1316. And whether a party includes an attorney fees provision in its own standard contract forms is a significant factor. Comark, 932 F.2d at 1202. The district court failed to make factual findings concerning any of these factors.
 
 
 39
 The district court also failed to make factual findings on the issue of hardship. The district court misread the Offen decision as including hardship with unreasonable surprise as factors for not finding the attorneys' fee provision to be a material alteration to the contract. The Offen court did not discuss hardship. The district court based its determination of no material alteration upon its reading of Offen, but did not make factual findings regarding hardship in this case. In a transaction involving the sale of goods the analysis of the existence of hardship focuses on whether the clause at issue "would impose 'substantial economic hardship' on the nonassenting party." Dale R. Horning Co., 730 F.Supp. at 967, quoting Trans-Aire International, Inc. v. Northern Adhesive Co., Inc., 882 F.2d 1254, 1262 (7th Cir.1989). The court should therefore consider whether GE and/or EPPSCO will suffer significant economic hardship if the attorney fee provision becomes a term of the contract by operation of law under UCC 2-207(2).
 
 
 40
 Because of its erroneous reading of Offen, the district court failed to indicate any factual basis for its ultimate conclusion that the attorney fee provision was not a material alteration. We, therefore, remand for further proceedings to permit the trial court to apply the appropriate criteria and make the missing findings of fact. Pullman-Standard v. Swint, 456 U.S. 273, 291, 102 S.Ct. 1781, 1791, 72 L.Ed.2d 66 (1982). On remand GE and EPPSCO will have the burden of proving surprise or hardship.[9]
 
 B. Prevailing Party
 
 41
 Appellants argue that even if the attorney fees provision is a term of the contract between American, GE and EPPSCO, American does not automatically recover them. Appellants maintain that American cannot recover attorney fees unless it was the prevailing party. The attorney fee provision in the purchase order, however, states that if legal action becomes necessary "in connection with this Purchase Order, then if the Seller is not the prevailing party in such action, Seller agrees to pay reasonable legal fees and costs ..." Therefore, it is not American's status as prevailing party that is relevant. Rather it is appellants'. The district court held that neither EPPSCO nor GE prevailed against American. Factual questions pertaining to whether appellants prevailed in the case will be reviewed under the clearly erroneous standard, while any legal analysis providing the basis for the court's decision will be reviewed de novo. See Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986).
 
 
 42
 Appellants first argue that receiving an affirmative recovery does not necessarily make American a prevailing party.[10] GE asserts that American sought hundreds of thousands of dollars of damages in the categories of administrative costs, liquidated damages, lost interest, direct costs, and extended insurance but the jury awarded American only its direct costs. GE claims that because it avoided the bulk of potential liability to American it should be considered a prevailing party. EPPSCO argues that it is entitled to prevailing party status because it was not found liable for any of American's damages.
 
 
 43
 As to GE's argument, the district court found that because the "special verdict form did not ask for a determination of damages by category" it would be impossible to "determine whether GE succeeded in avoiding liability in any category of damages." Memorandum Opinion at 10. We find no error in this conclusion.
 
 
 44
 As to EPPSCO's argument, the district court first noted that the courts of New Mexico hold "that the 'prevailing party' is the party that wins the lawsuit." Id., citing South v. Lucero, 92 N.M. 798, 595 P.2d 768 (Ct.App.1979), cert. denied 92 N.M. 675, 593 P.2d 1078 (1979). It then stated that a party who recovers only nominal damages will be considered the prevailing party. Id., citing Burk v. Unified School Dist. No. 329, 116 F.R.D. 16 (D.Kan.1987). It concluded "[a]lthough American did not seek or receive nominal damages against EPPSCO, nominal damages are recoverable against a party who breaches a contract even where no actual damages can be proved." Id., citing 11 Samuel Williston, A Treatise on the Law of Contracts § 1339A (3d ed. 1968). We agree with this analysis. American alleged and the jury found that EPPSCO breached the contract and breached the express warranties. "The determination of who is the prevailing or successful party is based upon success upon the merits, not upon damages...." 20 C.J.S. Costs § 11 (1990).
 
 
 45
 Appellants' second assertion is based on the fact that on September 13, 1989 they made an offer of judgment in the amount of $35,000.00 pursuant to Rule 68 of the Federal Rules of Civil Procedure. Rule 68 permits a party defending against a claim to recover all costs incurred after the making of an offer of judgment if the offeree rejected the settlement offer and ultimately was awarded less at trial. Appellants cite Tippie v. Delisle, 55 Wash.App. 417, 777 P.2d 1080 (Wash.App.1989) for the proposition that a party who rejects a Rule 68 offer and obtains a judgment less than the offer cannot be considered a prevailing party. They contend that American cannot be judged the prevailing party in the lawsuit because American recovered less than $35,000.00 at trial. We will assume that appellants are arguing that if American is not the prevailing party in the case then they are.
 
 
 46
 In Tippie, the Tippies brought suit claiming they were damaged when the Delisles' car collided with the car driven by Mrs. Tippie. Tippie, 777 P.2d at 1081. Before trial the Delisles offered the Tippies $2,500.00 plus costs to settle. Id. The Tippies refused the offer. Id. At trial Mrs. Tippie was awarded $2,000.00 and her husband was awarded nothing. Id. A state statute allowed attorney fees and costs to prevailing parties in tort actions. Id. at 1082. The trial court ruled that the Tippies were the prevailing parties because they obtained a judgment. Id. The Delisles sought costs and attorney fees pursuant to a state statute which is virtually identical to Rule 68 of the Federal Rules of Civil Procedure. Id. The trial court judged both parties to have prevailed and offset the amount of the Delisles' costs against the Tippies' costs. Id.
 
 
 47
 On appeal the Tippies claimed that they were the prevailing parties and therefore entitled to attorney fees and costs without the offset. Id. The Delisles argued that they were entitled to recover costs because their settlement offer was higher than the award the Tippies recovered at trial. Id. The issue on appeal was how the statute granting attorney fees to prevailing parties and the offer of judgment statute should be reconciled. Id. at 1082.
 
 
 48
 The appellate court found that a party who rejects a Rule 68 offer and then obtains less than the offer at trial cannot be considered a prevailing party under the state statute. Id. Therefore, it held that the Delisles were entitled to their costs and attorney fees which accrued after the offer of judgment and the Tippies were not entitled to fees because they did not prevail. Id.
 
 
 49
 The Tippie case is distinguishable from the present case. Rule 68, by its terms, applies to a situation where the offeror tries to recover its post settlement offer costs from the offeree. This is what happened in Tippie. GE never sought Rule 68 costs from American. EPPSCO did seek Rule 68 costs but the district court denied the request and EPPSCO has not appealed the denial. Rule 68 simply is not applicable to the instant case. We refuse to extend the "prevailing party" analysis set forth in Tippie beyond the context of a case where Rule 68 is actually being employed.[11]
 
 
 50
 In addition to the $35,000.00 Rule 68 offer of judgment, appellants also claim that they attempted to settle the case on June 27, 1989 for the amount of $50,000.00. At that time the trial date was set for August 16, 1989. Then five days before the actual trial date they offered $40,000.00. Appellants suggest that because American ignored all of these offers and received less at trial it acted unreasonably and should, therefore, be estopped from receiving the attorney fees. We disagree.
 
 
 51
 It is acceptable for courts, on equitable grounds, to refuse to honor an attorney fees provision in a contract where the offeree declines a defendant's generous settlement offers before trial. See e.g., Cable Marine, Inc. v. M/V Trust ME II, 632 F.2d 1344 (5th Cir.1980). However, appellants do not make a strong case that their settlement offers were generous. As to the $50,000, $25,000.00 was offered by counsel for GE. Counsel for EPPSCO merely stated that he would recommend contributing $25,000.00 for a total of $50,000.00. Neither the so-called $50,000.00 offer nor the $40,000.00 offer which came five days before trial included costs or attorney fees. Certainly by the time the $40,000.00 offer came in American had incurred the bulk of its attorney fees and costs. And with the original trial date set in August there is no doubt that at the time of the $50,000.00 offer a substantial amount of attorney fees had been incurred.
 
 
 52
 The formal offer of judgment offered "$35,000.00, with costs accrued to date." Appellants claim the offer implicitly included the pre-offer attorney fees because attorney fees were provided for in the purchase order. They argue, "that the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority," quoting Marek v. Chesny, 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1984). Appellants cite two other cases consistent with Marek, David v. AM Intern., 131 F.R.D. 86, 88-89 (E.D.Pa.1990) and Said v. Virginia Com. Univ./ Medical College, 130 F.R.D. 60, 64 (E.D.Va.1990). The cases cited by appellants involved situations where the courts were considering whether, pursuant to specific civil rights statutes, attorney fees are an item of costs under Rule 68. These cases are not persuasive in this situation.
 
 
 53
 Here the attorney fees were recoverable pursuant to a private contract instead of substantive law. In addition the district court stated that GE and EPPSCO steadfastly denied that they were parties to the purchase order. We strongly doubt that had American accepted the offer appellants would have been forthcoming with not only the $35,000.00 but also over $100,000.00 in attorney fees which American had accrued as of the date of the offer. The district court found that American did not act inequitably or unreasonably in this case by refusing appellants' offers. We agree and affirm the district court's decision on this issue.
 
 C. Reasonableness of Attorney Fees
 
 54
 The purchase order provided for "reasonable legal fees and other costs incurred ..." American sought $158,355.70 in attorney fees and $17,909.06 in expenses. GE and EPPSCO challenge the district court's determination that the award was reasonable. We review the reasonableness of a fee award under the clearly erroneous standard. Carter v. Sedgwick County, Kan., 929 F.2d 1501, 1506-07 (10th Cir.1991).
 
 
 55
 In its order the district court first listed the factors that must be considered in determining the reasonableness of an attorney fee award under New Mexico law:
 
 
 56
 (1) the time and labor required--the novelty and difficulty of the questions involved and skill required;
 
 
 57
 (2) the fee customarily charged in the locality for similar services;
 
 
 58
 (3) the amount involved and the results obtained;
 
 
 59
 (4) the time limitations imposed by the client or by the circumstances; and
 
 
 60
 (5) the experience, reputation and ability of the lawyer or lawyers performing the services.
 
 
 61
 Memorandum Opinion at 11, quoting Thompson Drilling Inc. v. Romig, 105 N.M. 701, 705, 736 P.2d 979, 1983 (1987).
 
 
 62
 Appellants argue that although the district court recognized its obligation to consider the reasonableness of the fees and costs under these standards it failed to conduct the requisite analysis. We disagree.
 
 
 63
 We recognize that the trial court has the opportunity to observe the attorney's work first hand and that it also has a greater understanding of the litigation. See Poolaw v. City of Anadarko, Okl., 738 F.2d 364, 368 (10th Cir.1984). Though the factors set out in Thompson Drilling are helpful guidelines, there is no fixed formula that can be employed in making a determination of the reasonableness of attorney fees.
 
 
 64
 Both here and in the district court appellants challenge the reasonableness of the fee award based only on the grounds of excessive time spent and the results obtained. They assert that the case was not particularly difficult or complicated and that American spent sixty-five percent more time on the case than GE did. They, therefore, assert that the effort-to-result ratio was unreasonable. In addition they argue that the award is unreasonable because it is five times more than the jury verdict against GE and it increased EPPSCO's liability from nothing to $178,463.26.
 
 
 65
 The district court first stated that American had provided an extensive breakdown of its fees which included the date, time, attorney/staff and rate for each service and activity for which it billed.[12] It then noted that GE and EPPSCO did not object to any specific activity as superfluous or as taking an unreasonable amount of time. In addition neither party objected to the hourly rate of any person providing services.
 
 
 66
 The district court found that all parties in the suit were represented by superior counsel. It stated that this was not a simple contract case:
 
 
 67
 "Both GE and EPPSCO denied that they were parties to the contract. GE, in particular, took the position adamantly throughout trial that it only deals through distributors to sell electrical equipment. American was forced to prove the existence of the contract with each defendant. In addition, the parties engaged in good faith efforts to settle this case from its initiation. I cannot say that American's refusal to settle was unreasonable. The offer of judgment was made very near the date of trial after American had incurred significant legal expenses. American believed that it was entitled to its legal expenses as a term of the contract if it prevailed, which was not reflected in the amount of the offer."
 
 
 68
 Memorandum Opinion at 12.
 
 
 69
 The trial court is in a better position to assess the applicable factors set forth in Thompson Drilling. The court has broad discretion on the issue of the reasonableness of fees. We find no error in the court's analysis nor in its ultimate conclusion on this issue. We, therefore, affirm the district court's granting of the fee award to American.
 
 Conclusion
 
 70
 We affirm the district court's rulings on the issues of prevailing party status and the reasonableness of the amount of attorney fees. However, because we believe that the district court did not make sufficient findings of fact on the issue of whether the attorney fee provision was a material alteration to the parties' agreement, we reverse the judgment and remand for further proceeding consistent with this opinion.
 
 
 71
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 Honorable H. Dale Cook, Senior United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 [1]
 Rule 49(a) "permits the court to require a jury to return a verdict specific upon each issue of fact. These questions are to be submitted to the jury in written form, susceptible of brief answers. If in submitting these questions the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issues so omitted unless before the jury retires, he demands its submission to the jury. In case an issue of fact is omitted without such demand, the court may make a finding." Merrill v. Beaute Vues Corp., 235 F.2d 893, 896-97 (10th Cir.1956)
 
 
 [2]
 The court found that the GE quotation and its conditions, by its own terms, expired after fifteen days. "Although the parties continued to negotiate and ultimately came to an agreement, there is no indication that any of the terms or conditions of acceptance set out in the boiler plate language of the quotation were carried forward after the expiration of the 15-day period." Memorandum Opinion and Order at 7-8, The American Ins. Co. v. El Paso Pipe & Supply Co. and General Electric Co. (No. 88-858-M Civil) [hereinafter referred to as "Memorandum Opinion".]
 
 
 [3]
 The court again explained that the GE quotation had expired. In addition, the court stated that even if the quotation had not expired "it could not operate so selectively." Memorandum Opinion at 8. The quotation provided that any terms not included in the quotation were additional terms and GE objected to them. Id. However, the quotation consisted of only a basic list of equipment. Id. "Therefore, every other term contained in the Brown-Olds purchase order such as price, delivery date, and job specification was an additional term just as the attorney fees provision was." Id. The court found that under the conditions of the quotation GE would have objected to all of these additional terms unless it assented to them in writing. Id. It stated that there was no evidence that GE assented in writing to any additional terms in the purchase order. Id. "Yet, GE went along with the additional terms. GE cannot now select which additional terms it finds objectionable." Id
 
 
 [4]
 Appellants note in their brief that they placed an objection to any additional terms on the quotation that they sent to Brown-Olds. They do not, however, assert or cite any authority to support an argument that the court erred in its findings of fact or conclusions of law on the issue of whether the additional term fell within exception (a) or (c) to UCC 2-207(2)
 
 
 [5]
 GE and EPPSCO filed separate appeals which raise the same issues. The appeals have been consolidated pursuant to this Court's order
 
 
 [6]
 It should be noted that in Cement Asbestos Products v. Hartford Accident & Indemnity Co., 592 F.2d 1144 (10th Cir.1978) the 10th Circuit held that an attorney fees provision which was an additional term appearing on a written confirmation became a term of the contract between the parties. Id. at 1148. However, the case is inapposite to the case at bar. There the UCC 2-207(2) exceptions were not at issue. The only issue before the court was whether the parties were merchants for purposes of the 2-207 analysis. Because no exceptions applied and because the parties were found to be merchants the court held that the attorney fees provision became a term of the contract. Id
 
 
 [7]
 "Many factors are relevant in assessing materiality. Perhaps here lies the chief criticism of the Official Comments, namely, that the drafters presumed to establish guidelines through limited examples. What is and what is not material is an enormously complex issue, dependent upon a variety of circumstances almost as broad as human conduct itself. A variance in one situation may be material but not in another." 3 Richard W. Duesenberg & Lawrence P. King, Sales and Bulk Transfers under the Uniform Commercial Code, § 3.03 (1992)
 
 
 [8]
 Appellants argue that the district court erred in relying on circumstantial evidence and concluding that they saw the purchase order. They claim that the direct evidence is to the contrary. Direct evidence is "evidence which, if believed, proves the existence of the fact in issue...." 29 Am.Jur.2d Evidence § 4 (1967). It is clear from the jury's verdict and from the court's Memorandum Opinion that the direct evidence which appellants proffered on this point was not believed. "It is acceptable for a party bearing the burden of proof to utilize sufficient circumstantial evidence to support his or her position." Dillon v. Fibreboard Corp., 919 F.2d 1488, 1490 (10th Cir.1990). In determining whether the district court erred in finding that American met its burden of proof, we accept the factual findings of the trial court unless clearly erroneous. See Fed.R.Civ.R. 52(a). In its order the trial court stated:
 "GE "booked" the Brown-Olds order on October 7, 1983 and filled out a GE project requisition. A comparison of the terms and provisions of the Brown-Olds purchase order and the GE requisition shows that the information regarding the order on both forms is virtually identical, indicating that GE had the Brown-Olds purchase order in its possession when it entered the order. In addition, on November 5, 1983, EPPSCO submitted its purchase order to GE. The EPPSCO purchase order directs GE to follow instructions which appeared on the Brown-Olds order. The EPPSCO purchase order does not contain information sufficient for GE to have used it alone to fill Brown-Olds' order."
 Memorandum Opinion at 5.
 We have reviewed the briefs, the exhibits, and the limited transcripts supplied to us thoroughly and find no error in the district court's assessment of this issue.
 
 
 [9]
 The nonassenting party has burden of proving surprise or hardship. Comark, 932 F.2d at 1201; Dale R. Horning Co., 730 F.Supp. at 966 n. 2. The reason for this is "between merchants paragraph 2-207(2)(b) presumes the inclusion of the additional clause unless one of the three exceptions is met." Comark, 932 F.2d at 1201. Thus the party opposing the inclusion of an added term bears the burden of proving an exception. Id
 
 
 [10]
 Appellants cite Hutchins v. Schwartz, 724 P.2d 1194, 1204 (Alaska 1986); Tippie v. Delisle, 55 Wash.App. 417, 777 P.2d 1080, 1082-83 (1989); Dennis' Seven Dees Landscape, Inc. v. Platt, 91 Or.App. 663, 756 P.2d 683, 685 (1988); Owen Jones & Sons, Inc. v. C.R. Lewis Co., 497 P.2d 312 (Alaska 1972)
 
 
 [11]
 The Tippie case is also of no help to appellants because the court there did not say that the Delisles were prevailing parties
 
 
 [12]
 We have reviewed these documents and agree that they are clear and thorough