**AVEDON ENGINEERING, INC., a Colorado corporation, as assignee of H.B.C., Inc., a Colorado corporation, Plaintiff,**

v.

**SEATEX, a New York corporation, Consoltex, a New York corporation, the Balson–Hercules Group Ltd., a Rhode Island corporation, and Does 1–20, whose true names are unknown, inclusive, Defendants.**

No. CIV. A. 94–B–2561.

United States District Court,
D. Colorado.

Sept. 1, 2000.

John W. Gaddis, Grant, Bernard, Lyons & Gaddis, P.C., Longmont, CO, for Plaintiff.

Cassandra Sasso, Baker & Hostetler, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

This contract case is before me on remand from the Tenth Circuit Court of Appeals. *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279 (10th Cir.1997). The parties have briefed the issues of whether future transaction and arbitration provisions in Defendant's confirmation forms became part of the parties' contract, and if so what statute of limitations applies. The issues are adequately briefed and oral argument would not materially aid their resolution. For the reasons set forth below, I conclude that the arbitration and future transaction provisions became part of the parties' contract, and Colorado's three-year statute of limitations applies. I therefore order a stay of the proceedings.

### I. Facts

The following facts are viewed in the light most favorable to Plaintiff. Avedon Engineering, Inc., is the assignee of

H.B.C., Inc., d/b/a Twist ("Twist"). Twist was formed in 1992 to manufacture snowboarding clothing and accessories. Defendants Seatex, Consoltex, and the Balson–Hercules Group, Ltd., (collectively "Seatex") are textile merchants. Through a series of preliminary transactions, Twist evaluated Seatex's fabric for suitability in its clothing line. All negotiations took place with Seatex's agent, Goebel Textiles. For at least three of these preliminary transactions Seatex sent, and Twist received, a standard sales confirmation form. The front of each form contained a notice of arbitration. The back of each form contained two pertinent clauses. Clause 10 required arbitration of all disputes. Clause 11 required that all future transactions between the parties be controlled by the terms of the form unless superseded by a signed contract. Neither of these clauses was negotiated. Twist was asked to sign and return each form. Twist did neither.

Following these initial transactions, Twist placed a bulk fabric order from Seatex for its 1993–94 line of clothing through Goebel Textiles. Seatex argues that it sent confirmation form 2155 in response. Form 2155 was identical to previous confirmation forms. Twist argues that it never received form 2155. Regardless, Seatex shipped the fabric. Twist accepted delivery and used the fabric in its apparel. In December 1993 Twist received reports that a waterproof urethane coating on the Seatex fabric was pealing. The affected garments were returned to Twist, and Twist alleges damages from lost sales from 1993–94, as well as future seasons.

## II. Procedural Background

Twist filed this diversity case in state court on October 4, 1994 seeking contractual and tort damages. Defendants removed the case to this Court on November 10, 1994.

Pursuant to the future transaction and arbitration provisions, Seatex moved on January 20, 1995 for an order to compel arbitration and stay of proceedings. Twist denied there was an agreement to arbitrate and filed a demand for jury trial on that issue. On May 17, 1995, I concluded that the future transactions clause in the preliminary sales confirmation forms negated any issue of fact regarding Twist's receipt of sales confirmation form 2155. I also concluded that arbitration was not a material alteration and was, therefore, included in the contract between Twist and Seatex. I denied Twist's jury trial demand, granted defendants' motion to stay proceeding pending arbitration, and retired the case from the docket subject to reactivation for good cause shown.

Six months later, Seatex filed a motion to reactivate the case and moved for summary judgment on all claims for Twist's failure to arbitrate within the time frame specified by Clause 10. I concluded that my earlier legal analysis on the arbitration clause applied with equal force to all of the terms within the clause. Therefore, Twist was bound by conditions in the arbitration clause which required filing claims with the American Arbitration Association (AAA) in New York within one year of the breach. I concluded that Twist waived all claims by failing to timely make the arbitration filing and granted summary judgment.

On appeal, the Tenth Circuit Court of Appeals reversed my order staying litigation pending arbitration. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279 (10th Cir. 1997). The Court ruled that: (1) the Federal Arbitration Act, 9 USC § 1 *et seq.*, did not preempt the state law issue of whether the parties have agreed to arbitrate their dispute, *id.* at 1287; and (2) I should have begun my summary judgment analysis with a choice of law determination as to whether New York or Colorado state law applies. *Id.* at 1288. On remand, I first decided that Colorado state law applies to the issues of contract formation, construction, and interpretation. The parties then briefed the issues of whether the future transactions and arbitration clauses re-

quire arbitration in this matter, and if so, what statute of limitations applies.

### III. Colo.Rev.Stat. § 4–2–207

The parties agree that this case is controlled by Colorado's Uniform Commercial Code (U.C.C.), Colo.Rev.Stat. § 4–2–207. That statute applies "where an agreement has been reached either orally or by informal correspondence between the parties and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed." *Id.,* Official Comment at ¶ 1. "A written confirmation which is sent within a reasonable time, operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms." *Id.* at § 207(1). "Between merchants such [additional] terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They materially alter it; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received." *Id.* at § 207(2). The parties agree that both are merchants, the offer was not expressly limited, and notification of objection was not timely offered. Therefore, whether the future transactions and arbitration provisions became part of the contract depends on whether those terms materially alter the contract.

### A. Future Transactions

Twist argues that the arbitration clause did not become part of the parties' contract because Twist never received form 2155. I disagree. While the receipt of form 2155 is a matter of debate between the parties, it is undisputed that Twist received at least three other confirmation forms with identical arbitration and future transactions clauses. *See* Plaintiff's Response at p. 3. Twist received, at minimum, (1) Contract 1859, dated November 17, 1992; (2) A correction of contract 1859,

dated November 17, 1992; and (3) Contract 2020, dated November 17, 1992. Clause 11 in each states "Except to the extent that a future transaction is governed by a signed contract between two parties, the terms and conditions of this contract including without limitation, the provision for arbitration shall govern all future transactions." Plaintiff's Exhibit 4. The parties do not argue that a signed contract exists that might preempt this language. Therefore, if the future transactions clauses in contracts 1859 and 2020 were effective, their terms control the current contract as well.

Section 207(2) gives examples of clauses which would normally materially alter the contract, as well as those which are to be incorporated in the contract unless notice of objection is seasonably given. Neither addresses future transaction or arbitration clauses. *See* Colo.Rev.Stat. § 4–2–207 Official Comment at ¶¶ 4–5. Additionally, no state, including Colorado, has addressed whether a future transactions clause materially alters a contract under § 207(2).

Under Colo.Rev.Stat. § 4–2–207, terms "which 'materially alter' a contract include those which result in surprise or hardship to the parties." *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1284 n. 12 (10th Cir.1997) (citing U.C.C. § 2–207 cmt. 4). "Determining whether a term results in surprise or hardship requires the trial court to make a factual evaluation of the parties' position in each case." *American Ins. Co. v. El Paso Pipe and Supply Co.,* 978 F.2d 1185, 1190 (10th Cir.1992) (citations and quotation omitted). The nonassenting party has burden of proving surprise or hardship. *See id.* at 1192 n. 9. Surprise has both an objective and a subjective element. *See id.* at 1191 (citing *Dale R. Horning Co., Inc. v. Falconer Glass Indus., Inc.,* 730 F.Supp. 962, 966 (S.D.Ind.1990)). Surprise occurs "when a term is included without the express awareness of the other party." *Id.* (citing *Comark Merchandising, Inc. v. Highland Group, Inc.,* 932 F.2d 1196, 1202 n. 7 (7th

Cir.1991)). "[A]wareness does not necessarily require a party actually to have read the additional term." *Comark*, 932 F.2d at 1202 n. 7. "Courts should first make factual findings as to whether a nonassenting party subjectively knew of an added term. It must then make findings of fact concerning whether that party should have known that such a term would be included." *American Ins. Co.*, 978 F.2d at 1191. A prior course of dealing and the number of written confirmations exchanged between the parties is important to evaluate. *Id.* (citations omitted). In addition, absence of industry custom should be regarded. *Id.* (citations omitted). "Courts should also consider whether the addition was clearly marked on the written confirmation." *Id.* (citations omitted).

"In a transaction involving the sale of goods the analysis of the existence of hardship focuses on whether the clause at issue would impose 'substantial economic hardship' on the nonassenting party." *Id.* (citing *Dale R. Horning Co.*, 730 F.Supp. at 967, quoting *Trans–Aire Int'l, Inc. v. Northern Adhesive Co., Inc.*, 882 F.2d 1254, 1262 (7th Cir.1989)).

■ Twist argues that it had no knowledge of the future transaction term and the term therefore was both objectively and subjectively surprising. *See* Plaintiff's Brief at 4–5; Plaintiff's Exhibit 3 at ¶ 8. Twist has, however, failed to provide evidence of that fact. It provides affidavits that form 2155 was never received or read, but form 2155 is not at issue. Rather, the issue is the receipt and knowledge of the future transaction term in forms 1859 and 2020. Twist's owner avers that "Boilerplate # 2155 ... is similar to boilerplates Twist had received in the past from Seatex ... I believed such boilerplates were Seatex' internal records summarizing the shipment divisions for their own record keeping devices. I did not consider them to be part of our contract for the purchase/sale of the 200 Denier fabric and therefore did not sign it, return it to Seatex, nor paid [sic] any further attention to them."

Plaintiff's Exhibit 1 at ¶ 56–58. It is unclear from this evidence whether Twist read the future transaction clauses in the forms and simply failed to comprehend them, or never read them at all.

I conclude based on this limited evidence that Twist has failed to show subjective surprise. I further conclude that Twist has failed to show objective surprise. Its own affidavits show that Seatex regularly sent, and Twist received, forms with Clause 11. *See* Plaintiff's Exhibit 2 at ¶ 25; Plaintiff's Exhibit 1 at ¶ 56–58. Twist has failed to show that the future transaction clauses were contrary to industry custom or course of dealing between the parties. Further, it has failed to show hardship in any form. While Twist argues that arbitrating in New York would pose a hardship, it provides no evidence of that fact. I therefore conclude that the future transactions clauses do not materially alter the parties' contract, and apply the terms of forms 1859 and 2020 to the current contract.

## B. Arbitration Provisions

Because the future transactions clauses are viable, all terms in contracts 1859 and 2020 became terms in the current contract unless otherwise agreed in writing. The parties agree no other written agreement exists. Therefore, the validity of the arbitration provision also depends on whether it materially altered the parties' contract.

Colorado has not addressed whether an arbitration provision materially alters a contract under § 4–2–207(2). *See* Colo. Rev.Stat. § 4–2–207 Official Comment at ¶¶ 4–5. The Tenth Circuit suggested that Colorado would likely follow "a conventional UCC analysis on this issue." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1284 (10th Cir.1997). Courts vary in their approach to unilaterally inserted arbitration clauses. New York is on one extreme, holding that additional arbitration provisions are *per se* material alterations. *See Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380

N.E.2d 239 (1978). *But see Schubtex Inc. v. Allen Snyder, Inc.,* 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154, 1156 (1979) (suggesting that "a provision for arbitration could in a proper case be implied from a course of past conduct or the custom and practice in the industry"); *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir.1993) (holding the Federal Arbitration Act preempts the rule of *Marlene* because the rule discriminates against arbitration agreements); *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd.,* 189 F.3d 289 (2d Cir.1999) (same).

Other courts analyze whether an additional term will result in undue surprise or hardship. *See, e.g., Schulze and Burch Biscuit Co. v. Tree Top, Inc.,* 831 F.2d 709, 713 (7th Cir.1987) ("In short, a party should not be surprised to find in a confirmation a clause of a type that is customarily used within the trade, whereas the clause is an unreasonable surprise where it represents an unreasonable or harsh deviation from custom."); *N & D Fashions, Inc. v. DHJ Indus., Inc.,* 548 F.2d 722, 726 (8th Cir.1976) ("the better reasoned position is that the question whether an additional term in a written confirmation constitutes a 'material alteration' is a question of fact to be resolved by the circumstances of each particular case."); *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161 (6th Cir.1972) (whether an arbitration clause constitutes a 'material alteration' is a question of fact); *Dixie Aluminum Prods. Co., Inc. v. Mitsubishi Int'l Corp.,* 785 F.Supp. 157 (N.D.Ga.1992) (repeated opportunities for performance, repeated opportunities for objection, lack of objection, and course of dealing deemed relevant to unfair surprise); *Stewart Sandwiches, Inc. v. MSL Indus., Inc.,* No. 87 C 3478, 1990 WL 165630*3 (N.D.Ill. Oct. 19, 1990) ("Under Illinois law, an additional term materially alters the contract if it constitutes an unreasonable surprise to one of the bargaining parties."); *Valmont Indus., Inc. v. Mitsui & Co. (U.S.A.), Inc.,* 419 F.Supp. 1238 (D.Neb.1976) (absent evidence of prior transactions or dealings between the parties or evidence of trade custom and in view of plaintiff's failure to acknowledge the confirmation, the arbitration clause involved an element of unreasonable surprise and did not become part of the contract). *But see Supak & Sons, Mfg. Co., Inc., v. Pervel Indus., Inc.,* 593 F.2d 135, 136 (4th Cir.1979) (holding under both New York and North Carolina law the proposal to arbitrate is a *per se* material alteration); *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 n. 6 (3d Cir.1980) (assuming for purposes of the appeal that an agreement to arbitrate is a material term, citing New York law); 1 JAMES WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 1–3 at 27 (arbitration clause "would 'materially alter' and thus not survive 2–207(2)," citing no cases).

██ I am convinced that rather than creating a *per se* rule, Colorado would follow the same analysis that is has used in other non-arbitration 2–207(2) cases, and require an analyzation of subjective surprise, objective surprise, and hardship.

Twist must first prove subjective surprise. It is undisputed that the arbitration term was unilaterally inserted in the confirmation form by Seatex and was not negotiated by or pointed out to Twist. Twist asserts that although it received at least three copies of the terms in question, it "paid no further attention to them," Plaintiff's Exhibit 1 at ¶ 58, and was "totally surprised to learn that Seatex was attempting to compel us to arbitrate our claim." *Id.* at ¶ 70. *See also* Plaintiff's Exhibit 3 at ¶ 8, 13. I therefore conclude that Twist has shown subjective surprise.

██ Twist has, however, failed to show objective surprise. It is clear that Twist "should have known that such a term would be included." *American Ins. Co. v. El Paso Pipe and Supply Co.,* 978 F.2d 1185, 1191 (10th Cir.1992). The terms are clear and legible. The course of dealing between the parties shows that this form

was regularly sent as a confirmation for every order, both before and after the contract in dispute. Twist had at least three chances to read and object to Clause 10, but failed to do so. The custom in the textile industry is to include arbitration terms in all contracts. *See* Plaintiff's Exhibit 2 at ¶ 27; Defendant's Exhibit 1 at ¶ 5; Defendant's Exhibits A, B; *Helen Whiting, Inc. v. Trojan Textile Corp.*, 307 N.Y. 360, 121 N.E.2d 367, 370 (1954) ("The Court of Appeals has stated: 'From our own experience, we can almost take judicial notice that arbitration clauses are commonly used in the textile industry, . . .' "); *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722 (8th Cir.1976) (Many of the cases tripping over (Sections 2–201(2) and 2–207(2)) have derived from the textile industry where the practice of executing signed written agreements is as rare as Christian charity. In this multibillion dollar trade, orders are usually received orally and followed by some form of unilateral confirmation. (*"Because arbitration is common to the industry, the written confirmation usually contains a clause to arbitrate future disputes. No one objects to this clause, because the confirmation is received, filed, and never again referred to, unless a dispute arises."*) (emphasis added)).

Twist first argues that the font size and inconspicuous marking of Clause 10 made knowledge impossible. I disagree. My review of the forms shows clearly legible bold type on both the front and the back of the form regarding arbitration. *See* Plaintiff's Exhibit 4, Defendant's Unmarked Contract Exhibit (presumably Exhibit C). While the font on the front of the form is small, the back of the form is larger and legible. *See id.; Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie–Tynes Mfg. Co.*, No. 99–4042, 2000 WL 147392 *6 n. 6 (10th Cir. Feb. 4, 2000) ("We note that the U.C.C. does not require any of the terms at issue in this case to be conspicuous. *See* §§ 2–316(2) (requiring conspicuous exclusion or modification of implied warranties).").

Twist next argues that arbitration is not common in the snowboarding apparel industry, and thus the custom in the textile industry is inapplicable. *See* Plaintiff's Exhibits 5–7. Such a distinction is unpersuasive. Twist's own affiants refer to their position in and knowledge of the *textile* industry, not the snowboarding apparel industry. *See, e.g.,* Plaintiff's Exhibit 1 at ¶¶ 1, 66, 72 (emphasis added). Additionally, they chose to buy fabric from a textile company that does business with a variety of apparel makers. I therefore conclude that the applicable standard is that of the textile industry.

Finally, Twist argues that because it was a new company which relied on Goebel Textiles for guidance, the arbitration term should not apply. I disagree. While this argument may explain Twist's unfamiliarity with industry customs and assumptions regarding the contract, it cannot exempt it from Colo.Rev.Stat. § 4–2–207(2). Twist was a new company with young, inexperienced executives. *See* Plaintiff's Exhibit 1 at ¶ 66. Yet after receiving at least three identical forms purporting to add terms to the contract, Twist made no effort to inquire about the validity of those terms. Rather, they assumed the terms would not apply. *Id.* at ¶ 58. Although attempting to build a "world-wide market," Plaintiff's Exhibit 1 at ¶ 6, Twist relied solely on Seatex's agent for guidance through a billion-dollar industry. *See id.* at ¶ 72. Having made the decision to turn a blind eye to business dealings it did not understand, Twist cannot now claim exemption from the ramifications of those decisions. I therefore conclude that Twist has failed to prove objective surprise.

Finally, Twist has failed to prove hardship. Its owner states solely that "New York would be an extremely inconvenient place to resolve this case," *see* Plaintiff's Exhibit 3 at ¶ 11. Unfortunately, inconvenience accompanies most litigation. There is no indication of "substantial economic hardship." *American Ins. Co. v. El Paso*

*Pipe and Supply Co.,* 978 F.2d 1185, 1191 (10th Cir.1992).

I therefore conclude that the arbitration term was not a material alteration, and became part of the parties' contract.

## C. Statute of Limitations

■ Clause 10(e) of the confirmation forms states, "Arbitration proceedings must be instituted within one year after the claimed breach occurred, and the failure to institute arbitration proceedings within such period shall constitute an absolute bar to the institution of any proceedings and a waiver of all claims." Plaintiff's Exhibit 4. This phrase was set out in a separate clause from the arbitration provision itself. *See id.* Plaintiff argues that such a term is a material alteration under Colo.Rev.Stat. § 4–2–207(2). I agree.

Under general U.C.C. law, parties may contractually agree to alter the limitations period to a minimum of one year. *See* U.C.C. 2–725(1). Colorado, however, has not adopted this portion of the Code. Instead, in Colorado, "An action for breach of any contract for sale must be commenced within the time period prescribed in section 13–80–101, C.R.S. This period of limitation may not be varied by agreement of the parties." Colo.Rev.Stat. § 4–2–725(1). Section 13–80–101 requires that contract claims be commenced within three years. *See id.* at § 13–80–101(1)(a). Colorado varies from the Uniform Act both in its statute of limitations and in its refusal to allow reductions or extensions of that time period.

Seatex argues that § 725(1) is inapplicable, because it applies only to "actions." Under Colo.Rev.Stat. § 4–1–201, an action is defined as "a judicial proceeding includ[ing] recoupment, counterclaim, setoff, suit in equity, and any other proceedings in which rights are determined." Although "arbitration is arguably not an 'action' to which Colorado's prohibition against variations in limitations periods applies, the prohibition does not have to be enforceable against arbitration clauses to

'surprise' Twist as a party contracting under Colorado law." *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1286 (10th Cir. 1997). Therefore, it is necessary to engage in the familiar surprise and hardship analysis.

Twist has asserted that it was subjectively surprised by all arbitration terms. *See supra.* Additionally, even an experienced party would be objectively surprised by a statute of limitations period which arguably conflicts both with Colorado law and policy in the area of U.C.C. contract claims. *See id.* Finally, the hardship imposed by a one-year statute is clear, as I earlier dismissed this case under the one-year statute. *See* Order of February 2, 1996. I conclude that both surprise and hardship exist, and the statute of limitations in Clause 10(e) was therefore a material alteration. Instead, Colorado's three-year statute of limitations applies.

## IV. Parties' Motions

On January 20, 1995 Seatex moved to compel arbitration and to stay proceedings pending arbitration based on the same issues decided today. On February 2, 1996, having held that arbitration was required, I granted Seatex's motion. In their May 4, 1998 brief Twist requests that I allow this case to proceed to trial. In their May 14, 1998 brief Defendants request that I dismiss this action, and enjoin Twist from proceeding with any otherwise mandatory arbitration. I construe both requests as motions and deny both. I once again stay the proceedings and retire this case from the active docket subject to reactivation for good cause shown.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's request that I allow this case to proceed to trial is construed as a motion;

(2) Defendant's request that I dismiss this action, and enjoin Twist from proceeding with any otherwise mandatory arbitration is construed as a motion;

(3) Plaintiff's motion to proceed to trial is DENIED;

(4) Defendant's motion to dismiss is DENIED;

(5) Defendant's motion to enjoin arbitration is DENIED; and

(6) The proceedings are STAYED and the case is retired from the active docket subject to reactivation for good cause shown.